(December 23, 1911.)

## C. A. PHILLIPS, Respondent, v. HERMAN BROWN, JIM MURPHY and C. TIEDEMAN, Appellants.

[120 Pac. 454.]

SUFFICIENCY OF EVIDENCE—AGENCY—COMMISSION FOR SALE OF PROPERTY—TERMINATION OF CONTRACT.

(Syllabus by the court.)

1. Evidence in this case examined, and *held* not to support the findings and judgment of the trial court.

2. Where an action is brought upon a contract it is error for the trial court to admit in evidence in support of said complaint a contract of a different date for different terms and conditions than that which is plead in the complaint, without proper allegations being made in the complaint showing the relation of such proffered contract to the contract plead in the complaint.

3. It is a general rule of law recognized by the courts that where a party employs a real estate broker to sell a piece of property at a stipulated price, and the broker procures a purchaser who purchases such property, or is able and willing to purchase such property, upon the terms given the agent by the owner, the broker is entitled to his commission.

4. Where a broker is employed by the owners of property to find a purchaser and the owners offer to pay a commission of ten per cent upon such agent making such sale, and the option is good for eighteen months, and thereafter said agent produces a purchaser who enters into a contract with the owners in which the owners agree to sell said property, and payments were to be made upon specific dates of certain amounts, and time was the essence of the contract of sale, and thereafter the owners gave an order on the bank where the agreement to purchase was deposited in escrow to pay to such agent ten per cent upon payments made under said contract, and such purchaser fails to make payments in accordance with said contract and offers no reason or excuse therefor, and said contract is abandoned, and the owners refuse to confer further with the proposed purchaser or make any further contract with him, and nothing is done under said contract, and the owners were in no way responsible for such forfeiture, and thereafter the owners in good faith make a contract through another person to sell to him said property, and such sale is completed, the first agent employed to make such sale is not entitled to recover a commission.

APPEAL from the District Court of the Second Judicial District for Idaho County.  Hon. Edgar C. Steele, Judge.

An action to recover commission as agent in the sale of mining property.  Judgment for plaintiff.  Defendants appeal. *Reversed.*

F. E. Fogg, for Appellants.

Broker has no right to commissions, if his services fail to accomplish a sale, and after the proposed purchaser has decided not to buy, other persons induce him to do so.  (*Earp v. Cummins,* 54 Pa. 394, 93 Am. Dec. 718.)

Unless the owner has been responsible for the delay in making the sale to the purchaser, or such delay has been caused by some negligence or fraud of the land owner, then if the sale be not completed within the time limited the broker cannot recover commission, although the owner afterward in good faith succeeds in selling the property to the same party. (*Fultz v. Wimer,* 34 Kan. 576, 9 Pac. 316; *La Force v. Washington University,* 106 Mo. App. 517, 81 S. W. 209; *Sibbald v. Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Wylie v. Bank,* 61 N. Y. 415; *Fairchild v. Cunningham,* 84 Minn. 521, 88 N. W. 15; *Beauchamp v. Higgins,* 20 Mo. App. 514; *Page v. Griffin,* 71 Mo. App. 524.)

In the absence of any bad faith by defendant in making the sale the plaintiff could not recover any commission. (*Nadler v. Menschel,* 110 N. Y. Supp. 384.)

W. N. Scales, for Respondent.

Where the broker procures a party ready and willing to buy, but the principal takes the further proceedings out of his hands and concludes the sale himself or through another, the broker has earned his compensation.  (*Gottschalk v. Jennings,* 1 La. Ann. 5, 45 Am. Dec. 70, and cases cited; *Smith v. Anderson,* 2 Ida. 537 (495), 21 Pac. 412; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490.)

It is sufficient to entitle a real estate agent to receive his commission for the sale of land if he, under a contract with the owner thereof, has been the procuring cause of such sale. He need not conduct it to a final and successful conclusion. (*Marlatt v. Elliott*, 69 Kan. 477, 77 Pac. 104; *Norris v. Byrne*, 38 Wash. 592, 80 Pac. 808; *Ratts v. Shepherd*, 37 Kan. 20, 14 Pac. 496; *Wilson v. Sturgis*, 71 Cal. 226, 16 Pac. 772; *Knox v. Parker*, 2 Wash. 34, 25 Pac. 909; 19 Cyc. 261; *Barton v. Rogers*, 84 Ill. App. 49; *Winans v. Jaques*, 10 Daly (N. Y.), 487; *Shipman v. Frech*, 1 N. Y. Supp. 67; *Wood v. Wells*, 103 Mich. 320, 61 N. W. 503.)

STEWART, C. J.—This is an action to recover commission for the sale of certain mining property. The complaint alleges that on or about the 12th day of October, 1909, the defendants entered into a contract with the plaintiff wherein and whereby they promised, contracted and agreed that if he would bond, contract for the sale or sell certain mining property, that they would compensate him for his services in making such sale and pay him the sum of ten per cent on all amounts received by the defendants as the purchase price of said property, said ten per cent to be due and payable when each and every amount was paid to the defendants on such purchase price, and as the same was paid; that under said contract the plaintiff employed his time and experience to find a purchaser and did find a purchaser in the person of one R. Alvin Weiss and associates, who entered into a contract and agreement with the defendants whereby they contracted and agreed that they would pay the defendants the purchase price of said property in the sum of $100,000, as follows: $500 on or before March 5, 1910; $5,000 on or before May 5, 1910; $5,000 on or before August 20, 1910; $45,000 on or before April 20, 1911; $44,500 on or before October 20, 1911; and that possession of the property was delivered to R. Alvin Weiss, and that they are now in possession; that under the contract of purchase Weiss and his associates paid to the defendants the following payments due under said con-

tract of purchase, to wit: $500 on March 5, 1910; $5,000 on or before May 3, 1910.

A supplemental complaint was afterward filed alleging the further payment on the purchase price of $5,000 made on August 20, 1910. To this complaint the defendants filed an answer, and deny that on the 12th day of October, 1909, or at any other time or at all, they entered into a contract or agreement with the plaintiff for the sale of the mining property, or any agreement, except that an agreement was made on December 27, 1909, between the defendants and the plaintiff, whereby it was agreed that a commission of ten per cent was to be retained by the First National Bank of Grangeville where contract and deed were in escrow, to be paid to Phillips out of the payments made on the Center Star Group of mines, and that the agreement held good only during the life of the above-named contract in escrow; denies that the plaintiff in pursuance of the contract alleged in the complaint employed his time or knowledge or experience to find a purchaser, or that he did find a purchaser in the person of R. Alvin Weiss and associates, or that he procured a purchaser for said property at all; and denies that Weiss and his associates purchased said property or entered into a contract and agreement as described in the complaint, and denies that they delivered possession to Weiss and his associates, and denies that they are in possession of said property; and denies that they entered into any contract except a certain agreement on November 11, 1909, for the sale of said property, which was the agreement mentioned in the paper of December 27, 1909; and denies that Weiss and his associates paid to the defendants any money upon the contract described in the complaint or upon any contract or agreement, and denies that the plaintiff complied with his part of the contract or agreement made for the sale of the property; and alleges that R. Alvin Weiss, mentioned in the agreement between the plaintiff and the defendants, defaulted in his contract for the purchase of said property, in the sum of $10,000 due on February 8, 1910, and that said sum or any part thereof was ever paid by Weiss; and alleges that after Febru-

ary, 1910, and on March 1, 1910, the escrow mentioned in said contract between Weiss and the defendants, as well as said contract between these defendants and the plaintiff, was terminated in accordance with the terms thereof, and denies that anything is due.

A jury was waived and the cause was tried to the court. The findings recite: That on or about October 12, 1909, the defendants were the owners of certain mining property and on said date entered into a contract and agreement with the plaintiff whereby they promised and contracted and agreed that if the plaintiff would sell the said property they would compensate him by paying for his services a commission of ten per cent upon all amounts received by the defendants on the purchase price of the property, and that the said ten per cent would be due and payable whenever each amount was paid to said defendants on the purchase price; that under said contract the plaintiff employed his time and money to find a purchaser and found a purchaser in the person of R. Alvin Weiss and associates, who entered into a contract whereby they agreed to pay $100,000 for said property; $500 on March 5, 1910; $5,000 on or before May 5, 1910; $5,000 on or before August 20, 1910; $45,000 on or before April 20, 1911, and $44,500 on or before October 20, 1911. That under the terms of said contract the purchaser paid $500 on or before March 5, 1910, $5,000 on or before May 3, 1910, and $5,000 on or before October 20, 1910, making the total amount paid $10,500. That the defendants and plaintiff executed the paper set out in the answer and designated an "agreement," but that said writing was in addition to the agreement for the sale of said property which had been already entered into, and was an order on the First National Bank of Grangeville, Idaho, to pay said commission, and was not an agreement for the sale of said property entered into by the plaintiff and defendants; that the written agreement dated November 11, 1909, for the sale of said property was entered into by the defendants with the said R. Alvin Weiss, and another agreement was made by the defendants with one I. Binnard who was acting as the authorized agent of R. Alvin

Weiss and his associates, both of which were entered into through the efforts and services of said plaintiff, and were for the sale of said property; that the last-mentioned agreement was an agreement under the terms of which the payments were made as heretofore set out; that no payments were made under the contract dated November 11, 1909, but that said contract dated the 5th day of March, 1910, was entered into in pursuance of the continued negotiations and efforts inaugurated and continued by said plaintiff with the said R. Alvin Weiss and his associates, and the contract between said plaintiff and the defendants was not terminated though the papers in escrow had been withdrawn under the first contract before the contract dated the 5th day of March, 1910, was entered into with the said I. M. Binnard for the said R. Alvin Weiss and his associates, the contract with the plaintiff and these defendants then being in full force and effect; that the plaintiff has fully complied with his part of said contract and that there is due the plaintiff the sum of $1,050 with interest. Upon these findings of fact and the court's conclusion that the plaintiff should have judgment for the amount found due, a judgment was rendered in favor of the plaintiff for the sum of $1,078 with costs. This judgment is dated November 22, 1910. A motion for a new trial was made and overruled and this appeal is from the judgment and from the order overruling the motion for a new trial.

Many errors are assigned on this appeal, a number of which arise out of the admission and rejection of evidence, and will be disposed of in considering the question of the sufficiency of the evidence to support the findings and judgment of the court. It is earnestly contended by counsel for the appellant that the evidence in this case does not support the findings and judgment. Before discussing this evidence we desire to call attention to the complaint and the findings of the court. The action is to recover compensation for services in finding a purchaser and selling certain mining property. The action is based upon a contract alleged to have been made between the plaintiff and the defendants on the 11th day of October, 1909, and it is alleged that in pursuance of that contract a

sale of the property described in the complaint was made by the plaintiff to one R. Alvin Weiss, for the sum of $100,000, payable in instalments as follows: $500 on or before March 5, 1910; $5,000 on or before May 5, 1910; $5,000 on or before August 20, 1910; $45,000 on or before April 20, 1911, and $44,500 on or before October 20, 1911; and it is alleged that Weiss paid the defendants all the payments due upon said contract of purchase and by reason thereof the defendants owed the plaintiff $1,050 as commission. There are no allegations in the complaint with reference to any other contract or that a sale was made under any other contract or at any other time than on the 11th day of November, 1909. The trial court, however, found that the contract made on the 11th day of November, 1909, set forth in the complaint was made, and that plaintiff was to receive ten per cent as a commission for making such sale; and that under the terms of said contract the said R. Alvin Weiss and his associates paid to said defendants the following payments: $500 on or before March 5, 1910; $5,000 on or before May 3, 1910; and $5,000 on or before August 20, 1910, making the total amount paid $10,500.

It is conceded by both parties to this action that the defendants agreed to pay the plaintiff a commission of ten per cent upon the plaintiff's making a sale of the mining properties of the defendants. There is, however, nothing in the record which shows how long the agency of the plaintiff is to continue, or within what time or upon what terms the plaintiff is to make such sale, except such as appears from the written contract made by the plaintiff with the purchaser to whom the defendants contracted to sell such property, on November 11, 1909, and a letter written by the defendants to the plaintiff dated October 12, 1909, and an agreement entered into between the plaintiff and the defendants on December 27, 1909, and in which latter paper it was agreed that a commission of ten per cent was to be retained by the First National Bank of Grangeville with whom the contract and deed were placed in escrow, and which was to be paid to the plaintiff out of all payments made on the Center Star group sale to R. Alvin Weiss, and

that such latter agreement was to hold during the life of the above-named contract placed in escrow. From these documents it conclusively appears that the defendants agreed to pay the plaintiff a commission of ten per cent for the sale of said property, and that plaintiff made a contract with R. Alvin Weiss on November 11, 1909, for the sale of said property, and it is conceded by both parties that this contract was defaulted by Weiss, and that no payments were ever made upon said contract and that said contract was forfeited and abandoned by Weiss and no effort made by him to comply with the same. Notwithstanding this evidence and these concessions and admissions, the trial court found that the paper executed by the plaintiff and the defendants, set forth in the defendants' answer, that is, the order dated December 27, 1909, whereby the First National Bank of Grangeville was directed to pay to the plaintiff out of all the payments made on the contract of Weiss, was also in addition to the agreement for the sale of said property which had already been entered into, and that the written agreement of November 11, 1909, for the sale of said property was entered into by the defendants with Weiss, and also another agreement was made by the defendants with I. M. Binnard, who was then acting as the authorized agent of Weiss, both of which contracts were entered into through the efforts and services of the plaintiff, and that the last-mentioned agreement was the agreement under which the payments were made as heretofore set out; that no payments were made under the contract dated November 11, 1909, but that the contract dated March 5, 1910, was entered into in pursuance of the continued negotiations and efforts inaugurated and continued by Weiss, and that the contract between the plaintiff and the defendants was not terminated, though the papers in escrow had been withdrawn under the first contract before the contract dated the 5th day of March, 1910, was entered into with the said Binnard.

It will thus be seen that the court has made findings upon a state of facts which are not alleged in the complaint, and not proven, and has found that the contract made between the defendants and the plaintiff as to the payment of a com-

mission in the first instance was continued long after the termination of the time in which the plaintiff was to sell the property of the defendants in the first instance, and long after the termination of the contract made by the plaintiff for the sale of such property. These findings have been excepted to and we are unable to discover any evidence to support them. There is no conflict at all in the evidence, but that the contract for the sale of said property made between the defendants and Weiss on November 11, 1909, was abandoned by Weiss and no payments whatever made by him upon said contract. In the letter of defendants to the plaintiff dated October 12, 1909, one of the defendants wrote as follows:

"Elk City, Idaho, Oct. 12–09.

"Mr. C. W. Phillips,

Spokane, Wash.

"Dear Sir: Your letter of the 7th at hand, and in regards to the Center Star Mine it is still open for business to-day but I wish you would hurry your man before the wheater gets bad because it makes thing unconveaniant, and further more we have several parties at hand but we will lay low and give your man a chance. Now our terms are these we will give a bond for 18th months for $100,000 with a 10% payment and balance in three payments in reasonable time and your fee be 10% out of our payments.

"Yours truly,

"C. TIEDEMAN,

"Part Owner."

It will be observed from this letter that the price at which the property was offered was $100,000, and that the time within which the property should be sold for $100,000 was eighteen months and that the defendants would pay the plaintiff ten per cent commission. The plaintiff found a purchaser for the property in the person of R. Alvin Weiss, and a contract was made with him for the sale of said property, and it is dated November 11, 1909, signed by the defendants and R. Alvin Weiss, and under this contract Weiss agreed to purchase the property and to pay therefor $100,000; $10,000 to be paid on February 8, 1910, and $90,000 on or before Feb-

ruary 8, 1911, and in this contract it was provided that a deed
of escrow should be made and placed in the First National
Bank of Grangeville; and the contract further provides:
"Time is the essence of this agreement, and should the said
second party or his assigns make default in any of the terms,
times, payments or conditions herein provided to be made
by him or in either of them, he shall forfeit to the said first
parties all payments made prior to such default, and all work
or labor done on said property or any portion thereof, and all
machinery," etc.

This contract was placed in escrow with the First National
Bank of Grangeville on December 27, 1909. The defendants
entered into an agreement with the plaintiff by which it was
provided that the First National Bank of Grangeville should
pay to the plaintiff a commission of ten per cent out of the
payments made on said contract, and that this agreement
would hold good only during the life of the above-named con-
tract in escrow. These documents clearly show that in the
first instance the plaintiff was required to find a purchaser
within eighteen months, and later in the contract made with
the purchaser it was provided that the first payment should
be made on or before February 8, 1910, and the last payment
on or before February 8, 1911. There is no evidence what-
ever to show that the defendants ever in any way or manner
agreed to continue the plaintiff's employment as an agent
beyond the period expressed in this agreement, and the order
of December 27, 1909. The finding of the court, therefore,
upon this question, is without any evidence to support it.
The court has found that the agreement made by the defend-
ants with one I. M. Binnard was entered into through the
efforts and acts of Weiss, and that the payments for the pur-
chase price of said property were made under the terms of
the contract made with Binnard, and that no payments were
made under the contract of November 11, 1909. This find-
ing is clearly unsupported by the evidence and is not in accord
with the pleadings; the complaint is not based in any way
upon any agreement with Binnard, but the commission

claimed to be due is upon a sale made by the plaintiff to Weiss. And the court further finds that the contract between the plaintiff and the defendants was not terminated, though the papers in escrow had been withdrawn under the first contract before the contract with Binnard was made, and was still in full force and effect when the contract with Binnard was made. We think this finding is contrary to the evidence. In the letter of October 12, 1909, the time limit was eighteen months, and in the contract of sale made which the defendants signed, upon the sale made by the plaintiff, the first payment was to be made February 8, 1910, and there is nothing whatever to show that the defendants ever agreed with the plaintiff to continue his services as agent to find a purchaser after the termination of that contract, or that they in any way authorized or empowered the plaintiff to do anything in the way of finding a purchaser, and it is not claimed that the plaintiff in fact did find a purchaser. The sale was made to I. M. Binnard. He did not know the plaintiff at the time he entered into the contract to buy the property, and he had never seen him and knew nothing about his connection with the defendant or that he had been attempting to find a purchaser for such property. There is no conflict in the evidence on this point, and the defendants expressly inquired from Binnard whether Weiss was in any way connected with such proposed purchase, and were informed that Weiss had no connection whatever with the proposed purchase of the property; that Binnard did not know Weiss; this evidence is in no way contradicted. The second contract, made between the defendants and Binnard on the 5th day of March, 1910, was made in Binnard's name; he made the first payment and as the evidence shows purchased the property for himself; and afterward it is shown that I. M. Binnard assigned his interest in his contract to B. Binnard & Co., and B. Binnard & Co. assigned a half interest to one J. T. McCarrier, and thereafter B. Binnard and J. T. McCarrier, as owners of said property, offered to sell and assign the same to the Elk City Gold Mining Company in consideration of the delivery to them of 800,000 shares of

the full paid nonassessable stock of said company, and thereafter the company accepted said offer and it was agreed that such 800,000 shares of stock should be so issued to different persons, among whom was R. Alvin Weiss, who should receive 35,000 shares; and so far as Weiss becoming interested in the property or acquiring any interest therein through the contract made with Binnard, it came about in the way suggested above; but there is no evidence to show that in his purchasing such stock or accepting the same as a stockholder in said company, he did so as agent or upon request of, or in furtherance of any contract he had ever made with, the defendants. In the case of *Smith v. Anderson,* 2 Ida. 537 (495), 21 Pac. 412, this court announces a rule of law governing real estate brokers, as follows: "Where a party employs a real estate broker to sell a piece of real property at a stipulated price, at an agreed commission, and the broker finds a purchaser and introduces him to his employer, and afterward the employer sells the property to said purchaser at a less price and refuses to pay the broker his commission, held, the broker is entitled to his commission of ten per cent." And in the case of *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490, this court said: "Where a party employs a real estate broker to sell a piece of real property at a stipulated price, and the broker procures a purchaser, who purchases the property at that price, the broker is entitled to his commission therefor. . . . . It was sufficient if the appellant found a purchaser, showed him the land, and explained its desirability as a purchase, and was instrumental in making the sale."

We think, under the authorities, that where an agent has been employed to find a purchaser for the sale of property, and such agent advertises such property and shows it to prospective purchasers, and a purchaser is found who is ready and willing to purchase the property upon the terms fixed by the principal, and such agent has been the cause or one of the causes which results in the sale, then in such case the commission for such sale may be collected; but where it is shown, as in this case, that the agent is employed to make a sale within a fixed time, and his commission is only to be

paid on condition that the sale is made within that time, and the sale is not made within the time limit, and the owner has in no way been responsible for the delay in making such sale, and such delay has not been caused by negligence or fraud of the owner, the owner is not liable to the said agent for a commission upon a sale thereafter made by the owner, even though the first prospective purchaser became interested as a stockholder in the corporation purchasing such property, or was instrumental in forming such corporation.

In the case of *Fultz v. Wimer,* 34 Kan. 576, 9 Pac. 316, the supreme court of Kansas, discussing this question, holds: "Fultz failed to find or produce a purchaser ready and willing to take the farm and pay the money within the time prescribed in the written contract, or within the time that Wimer extended such contract, and Wimer was under no obligation to wait any longer that he might make further efforts. (22 Cent. Law J. 466; *Wylie v. Bank,* 61 N. Y. 415.) After the extension of the contract had expired, Wimer had the right to sell to Galli or to anyone else; and, under the written contract, he was not liable to pay to Fultz his commission, or any other sum, because, after the expiration of the extension of the contract, the contract had spent its force. (*Coleman v. Meade,* 13 Bush (Ky.), 358; *Charlton v. Wood,* 11 Heisk. (Tenn.) 19.) If the delay in closing the sale between Galli and Wimer had been caused by any negligence, fault or fraud of Wimer, Fultz would be entitled to his commission; but the evidence shows nothing of this kind. Wimer acted in the best of faith, and was very desirous, being overanxious, for Fultz to produce a cash purchaser upon the terms prescribed in the written contract."

This language applies very directly to the facts of this case. The defendants were anxious to sell the property and were perfectly willing to sell upon the terms they gave, and which were embraced in the Weiss contract, and after Weiss had made default in making the payments, they still told him that they were ready to convey the property if he would come forth according to contract; and while he asked for an extension, they declined it; yet the evidence shows that they

were at all times ready to sell for that price, and they appear to have acted in perfect good faith when they made the contract with Binnard, and had no knowledge whatever that the plaintiff in this case, or Weiss, had any claim or were then or would thereafter become interested in said property.

In the case of *La Force v. Washington University,* 106 Mo. App. 517, 81 S. W. 209, the supreme court of Missouri says: ''Where there is no specific time named as limiting a real estate broker's agency, the owner may, after a reasonable time, and in good faith, revoke the agency and sell to the party with whom the broker had been negotiating; and *a fortiori* can he so sell after the expiration of a definite period provided in the contract has expired, and the broker is not entitled to commissions.

''The law is that even where there is no specific time named as limiting the agency, and a reasonable time elapses without a sale (circumstances considered), the owner may, in good faith, without design to avoid payment of commission, revoke the agency and sell to the party with whom the agent had been negotiating.'' (*Sibbald v. Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Wylie v. Bank,* 61 N. Y. 415; *Fairchild v. Cunningham,* 84 Minn. 521, 88 N. W. 15; *Beauchamp v. Higgins,* 20 Mo. App. 514; *Page v. Griffin,* 71 Mo. App. 524.)

A case very much like the one now under consideration was discussed and passed upon by the supreme court of New York in the case of *Nadler v. Menschel,* 110 N. Y. Supp. 384. In that case the agent found a customer but failed to make a sale and the owner thereafter sold the property through a different broker to a partner of the person to whom the first agent had proposed to sell, and at the time of such sale the owner did not know that the purchaser was in any way associated with the first agent's proposed purchaser, and the court said: ''In the absence of any bad faith by defendant in making the sale the plaintiff could not recover any commission.'' To the same effect is the case of *Woolley v. Buhler,* 25 N. Y. Supp. 1045, 73 Hun, 158.

These authorities, we think, announce the correct rule of law, that where an agent enters into a contract to find a

purchaser for property within a certain time at a certain price, and a contract of sale is made, and the proposed purchaser fails to comply with the contract of sale, and such contract is forfeited and abandoned, and the owner of such property refuses to give an extension and refuses to negotiate any further with such proposed purchaser, and afterward and in good faith makes a contract for sale to a third party who is in no way connected with or known to the former transaction, and in no way acquainted with the person who first contracted to purchase said property, and after said contract of sale is made, such purchaser transfers said option to a broker and a company is thereafter organized in which the first customer appears as a stockholder, and is instrumental in organizing the company to purchase said property, in the absence of fraud or negligence of the owners they will not be responsible to the first agent for his commission upon such sale.

There are a number of objections made to the introduction of evidence, which we think were well taken. Under the allegations of the complaint it was error for the trial court to receive in evidence the contract dated November 11, 1909. The action was in no way based upon this contract, and it could in no way be essential under the allegations of the complaint. If, as claimed by the respondent, it was a continuing agency, and the plaintiff was the agent up to the time the last contract was made, then the facts showing such agency should have been plead and in that instance such contract would have been relevant.

For the reasons herein given, we are of the opinion that the findings and judgment are not supported by the evidence, and the judgment is *reversed*, and a new trial granted. Costs awarded to appellant.

Ailshie and Sullivan, JJ., concur.