(June 25, 1913.)

## TONKIN-CLARK REALTY CO., Respondent, v. CLEM HEDGES, Appellant.

[133 Pac. 669.]

Motion for a New Trial—Waiver of Error in not Granting a New Trial—Telephone Message—Admissibility—Evidence—Weight—Credibility of Witness.

1. Where a motion for a nonsuit is made and overruled and the defendant introduces evidence to support the defense and makes a case upon the merits, the court or jury have a right to consider the whole case and the motion for a nonsuit is waived.

2. Where T. has a conversation with H. over a telephone line between two towns, and T. is called as a witness in a controversy between T. C. R. Co., of which T. was the president, and

H., with reference to a sale and exchange of property owned by each of said parties, to which such conversation referred, such evidence of T. in identifying the party with whom the conversation was had, when taken into consideration with other evidence in the case, is admissible in evidence to be considered by the jury in determining whether or not the conversation was between T. and H., and there was no error in the court's admitting such evidence.

3.   The evidence of D., called for the purpose of identifying H., who was defendant in the suit, as being at a certain place on a certain day, when objected to as not tending to sustain the verdict, presents a question which the jury alone was called upon to determine in arriving at the verdict in the case, and was not a question to be determined by the court. This evidence might aid other evidence, and the evidence altogether might be sufficient to sustain the verdict, although standing alone it might not sustain the verdict.

4.   The evidence in this case held to be sufficient to sustain the verdict and judgment.

5.   Where evidence as to whether or not a person making a contract is the agent of another party is of a substantial character, which shows that the agent was acting for the defendant and made the contract, and that the person with whom the contract was made made the contract upon the solicitation of the agent, and that the person for whom the agent acted accepted the contract made and accepted the benefits which resulted from the contract, such party cannot evade or defeat the authority of the agent in making said contract.

6.   The law is well settled in this state that where a party employs a real estate broker to sell a piece of property at a stipulated price, and the broker procures a purchaser who purchases such property, or is able and willing to purchase such property upon the terms given to the agent by the owner, or where the purchaser's attention was first called to the desire of the owner of the property by the broker, and thereafter he purchases the property, the broker is entitled to his commission.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Carl A. Davis, Judge.

An action for commission for services as a broker on a sale of real estate.   Judgment for plaintiff.   *Affirmed.*

Davidson & Davidson and O. J. Hood, for Appellant.

If the witness was acquainted with the defendant's voice, his testimony that he recognized his voice over the telephone.

would have been admissible as evidence, and it might constitute proof of his identity, but there was no proof of recognition of defendant's voice. (*Holzhauer v. Sheeny*, 127 Ky. 28, 104 S. W. 1034; *Swing v. Walker*, 27 Pa. Super. Ct. 366; *Rueckheim Bros. v. Ser Vis Ice Cream & Candy Co.*, 146 Ill. App. 607; *Gardner v. Hermann*, 116 Minn. 161, 133 N. W. 558.)

Earle C. Miller and J. B. Eldridge, for Respondent.

The trial court's order denying the defendant's motion for a nonsuit at the close of plaintiff's evidence is not reviewable in an appeal from a judgment entered in the case where defendant, after his motion for a nonsuit has been denied, introduces evidence. (*Shields v. Johnson*, 12 Ida. 329, 85 Pac. 972; *Rippetoe v. Feely*, 20 Ida. 619, 119 Pac. 465; *Smith v. Potlatch Lumber Co.*, 22 Ida. 782, 128 Pac. 546.)

The fact that the voice at the telephone is not identified does not render the conversation inadmissible. (*Wolfe v. Missouri Pacific R.*, 97 Mo. 473, 10 Am. St. 331, 11 S. W. 49, 3 L. R. A. 539; *Globe Printing Co. v. Stahl*, 23 Mo. App. 451; *Rock Island Pac. R. v. Potter*, 36 Ill. App. 590; *Sullivan v. Kuykendall*, 82 Ky. 483, 56 Am. Rep. 901; *Banning v. Banning*, 80 Cal. 271, 13 Am. St. 156, 22 Pac. 210; *Davis v. Walter & Son*, 70 Iowa, 465, 30 N. W. 804; *Guest v. Hannibal & St. Joe R.*, 77 Mo. App. 258; *Taylor v. The Robert Campbell*, 20 Mo. 254; *Oskamp v. Gadsden*, 35 Neb. 7, 37 Am. St. 428, 52 N. W. 718, 17 L. R. A. 441; *People v. McKane*, 143 N. Y. 455, 38 N. E. 950; *Gardner v. Hermann*, 116 Minn. 161, 133 N. W. 558.)

It is sufficient, to entitle a real estate broker to his commission, that his efforts were the procuring cause of the sale, that through his agency the purchaser was brought into communication with the seller and that a sale resulted therefrom. (*Phillips v. Brown*, 2 Ida. 62, 120 Pac. 454; *Wood v. Broderson*, 12 Ida. 190, 85 Pac. 490; *Hajner v. Heron*, 165 Ill. 242, 46 N. E. 211; Mechem on Agency, sec. 966; *Marlatt v. Elliott*, 69 Kan. 477, 77 Pac. 104; *Smith v. Anderson*, 2 Ida. 495, 537,

21 Pac. 412; *Buckingham v. Harris,* 10 Colo. 455, 15 Pac. 817; *Nolan v. Swift,* 111 Mich. 56, 69 N. W. 96; *Griswold v. Pierce,* 86 Ill. App. 406; *Goffe v. Gibson,* 18 Mo. App. 1; *Hambleton v. Fort,* 58 Neb. 282, 78 N. W. 498.)

STEWART, J.—This action was brought by the plaintiff against the defendant to recover the sum of $699.27 for services on an alleged sale of real estate owned by the defendant and alleged to have been listed for sale and sold to A. H. Krulish and Charles W. Krulish. The answer denies the allegations of the complaint, and alleges that the defendant listed the property involved with the A. L. Murphy Company, Ltd., a corporation engaged in the real estate business, and through such agency the property was sold to the same parties alleged in the complaint as being the purchasers through the agency of plaintiff.

The case was tried before a jury and a verdict was rendered for the sum of $699.27 and costs. Judgment was rendered in accordance with the verdict. This appeal is from the judgment.

The appellant assigns as error that the court erred in overruling defendant's motion for a nonsuit. Upon this alleged error it is sufficient to refer to the following cases wherein this court has determined the sufficiency of this error: *Shields v. Johnson,* 12 Ida. 329, 85 Pac. 972; *Rippetoe v. Feely,* 20 Ida. 619, 119 Pac. 465; *Smith v. Potlatch Lumber Co.,* 22 Ida. 782, 128 Pac. 546. In these cases it is held that where a motion for a nonsuit is made and overruled and the defendant introduces evidence to support his defense and makes a case upon the merits, the court or jury has a right to consider the whole case and the motion for a nonsuit is waived.

The appellant combines all the assigned errors except the motion for a nonsuit in the following contentions:

(1) The alleged conversation between J. O. Tonkin and defendant was inadmissible, and does not sustain the verdict and judgment. There is no merit in this assignment of error for the following reasons: (a) The judgment is not based wholly upon the conversation of Tonkin and defendant over-

the telephone. There are other facts in the case which in our judgment show that the defendant did list the property owned by him, and the appellant brought the attention of Krulish Brothers to the fact that the property was for sale or exchange for the property that was owned by Krulish Brothers; (b) The jury were the judges of the credibility of the evidence and the witnesses and the weight of evidence, and Tonkin testified that he had a conversation with the defendant over the telephone on the 21st day of July, 1911; this was only one fact which constituted the evidence which was submitted to the jury; (c) Tonkin is also corroborated by the evidence of Doyle and other evidence which clearly established that J. W. Hedges was the agent of the defendant, and the defendant ratified the acts of J. W. Hedges and accepted the benefits of his acts by conveying the property to Krulish Brothers. In the evidence of Tonkin he testifies, that when Tonkin called over the phone he asked for John Hedges, and the answer was, "this is Clem Hedges." This admission of Clem Hedges, when considered with the other evidence of the sale, identifies the party talking as Clem Hedges, and was acted upon and recognized thereafter in making the conveyance of the defendant's property to the very parties that the appellant was negotiating with after the property was listed with the plaintiff, and the jury were the judges as to whether or not the person talking over the phone was Clem Hedges or J. W. Hedges, notwithstanding Clem Hedges denies the same. This question of recognizing evidence of conversations over the telephone line is well recognized by the courts generally. In *Wolfe v. Missouri Pac. R. Co.*, 97 Mo. 473, 10 Am. St. 331, 11 S. W. 49, 3 L. R. A. 539, the supreme court of Missouri says: "The courts of justice do not ignore the great improvement in the means of intercommunication which the telephone has made. Its nature, operation and ordinary uses are facts of general scientific knowledge, of which the courts will take judicial notice. When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication in relation to his business through that channel. Conversations

so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible. The ruling here announced is intended to determine merely the admissibility of such conversations in such circumstances, but not the effect of such evidence after its admission. It may be entitled, in each instance, to much or little weight in the estimation of the triers of fact, according to their view of the credibility, and of the other testimony in support or in contradiction of it.'' We approve the foregoing opinion as to the admissibility of such evidence, and are satisfied that the effect of the admission of such evidence is a matter wholly with the jury, and it is within the power of the jury to determine the weight of such evidence according to the jury's view of its credibility and the other testimony corroborating the same or in contradiction of such testimony. This doctrine is also approved in the case of *Globe Printing Co. v. Stahl,* 23 Mo. App. 451; *Oskamp v. Gadsden,* 35 Neb. 7, 37 Am. St. 428, 52 N. W. 718, 17 L. R. A. 441.

(2) The alleged identification of defendant by W. A. Doyle as being at the office of the plaintiff with J. W. Hedges on his second visit on or about July 26, 1911, as tending to sustain the verdict, was a matter for the jury to determine and not for the trial court or this court. It may or may not have been a force of itself which tended to sustain the verdict, but taken with the other facts in the case the jury might determine that it was of great force in determining whether or not Doyle saw the defendant at the office of plaintiff with Hedges on July 26th, five days later than the property was listed on July 21st.

(3) The third assignment of error is subject to the same rule as governs the effect of the evidence referred to in No. 2, whether the jury gave consideration and weight to the testimony of defendant, that he might have been at the office of plaintiff about that time, but heard nothing about the land deal or exchange.

(4) The fourth assignment of error, that the verdict and judgment are not supported by the evidence, is the important question in this case. There can be no question but that the defendant was anxious to make a deal disposing of the real property, and through the acts of J. W. Hedges the defendant listed with the plaintiff the real property and agreed to pay plaintiff the regular commission, which on all sums over $10,000 was five per cent on the first five thousand, three per cent on the second five thousand and two and one-half per cent on the excess over ten thousand. There can be no question, also, but that the plaintiff obtained Krulish Brothers as customers for the exchange of the stock of merchandise and real estate at King Hill; that through Watson and Tonkin, members of the plaintiff firm, an agreement was made with Krulish Brothers to exchange their property to the defendant for his land, and that they informed the defendant, through J. W. Hedges, that an exchange of the property was made at the listed price of $20,000. The only issue of fact upon which the verdict is in conflict is, does the evidence show that J. W. Hedges acted in the transaction as agent of the appellant and had he authority to so act?

(5) The fifth assignment of error is, that the proofs do not show that plaintiff was the procuring cause of the exchange. There is evidence in the case of a substantial character that shows that J. W. Hedges acted as the agent of the defendant and listed the defendant's land with plaintiff for sale or trade, and that plaintiffs used their efforts and personally solicited and secured the Krulish Brothers as purchasers of said land, and that the defendant, through his agent J. W. Hedges, was informed that Krulish Brothers would make the trade; that after plaintiff began negotiations with Krulish Brothers, and while plaintiff was attempting to make the trade, the defendant completed the trade of his land as listed to Krulish Brothers, and accepted the benefits of the transaction; that for his services plaintiff was entitled to the commission provided in the listing of the property.

The court seems to have given the law of the case, and it was accepted by the jury, and the jury determined the issues

of fact.   The law is well settled in this state that where a party employs a real estate broker to sell a piece of property at a stipulated price and the broker procures a purchaser who purchases such property, or is able and willing to purchase such property upon the terms given to the agent by the owner, or where the purchaser's attention was first called to the desire of the owner of the property by the broker, and he thereafter purchases the property, the broker is entitled to his commission.   (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Phillips v. Brown,* 21 Ida. 62, 120 Pac. 454.)

We find no reversible error in the record.   The judgment is *affirmed.*   Costs awarded to the respondent.

AILSHIE, C. J., Concurring.—For reasons hereafter to be stated, I concur in affirming the judgment in this case, but I am not able to agree with what is said by Mr. Justice Stewart with reference to the telephone conversation which is supposed to have taken place between Tonkin and Clem Hedges and to which weight seems to be attached in affirming this judgment.   The property sold in this case was the property of Clem Hedges, and he is the party who is here charged with a commission on the sale.   The negotiations, however, were practically all had with J. W. Hedges, and it is claimed that J. W. Hedges was the agent and representative of Clem Hedges, and it is claimed that J. W. Hedges was the agent and representative of Clem Hedges in listing this property and procuring respondent to make the sale.

In speaking of the telephone conversation, Mr. Justice Stewart says: ''When Tonkin called over the phone he asked for John Hedges, and the answer was, 'This is Clem Hedges.' This admission of Clem Hedges, when considered with the other evidence of the sale, identifies the party talking as Clem Hedges, and was acted upon and recognized thereafter in making the conveyance of defendant's property to the very parties that the appellant was negotiating with after the property was listed with plaintiff, and the jury were the judges as to whether or not the person talking over the phone was Clem Hedges or J. W. Hedges, notwithstanding Clem Hedges

denies the same.'' I have no fault to find with the statement that the jury were the judges as to whether or not the person who talked to Tonkin over the phone was Clem Hedges, but I most emphatically dissent from the statement that there was any kind of evidence that the party with whom Tonkin talked was Clem Hedges.

The following is all the material testimony given with reference to this telephone conversation: ''Q. Now, Mr. Tonkin, did you have any conversation with Mr. Clem Hedges concerning this transaction on or about that time? A. A little later I did. Q. About what time was that? A. About,—oh, it must have been about eight or ten days afterward perhaps. Q. Where did this conversation take place? A. Over the telephone. Q. Did you call Mr. Hedges or did he call you? A. I called him. Q. Did you recognize Mr. Hedges' voice? A. He told me who it was. Q. Who did you call for? A. J. W. Q. And Clem Hedges answered the telephone? A. Yes, sir. Q. Will you please state what was said between you and Mr. Clem Hedges on that occasion? A. I called up for J. W. Hedges and it was Clem Hedges that answered, and I. told him about an exchange I had at Hiantha, Missouri. So instead of being John Hedges, Clem Hedges, and he told me over the phone, and I told him what I had. He told me he had nothing at all to do with it, that John was looking after that. That was the first time I knew J. W. Hedges' name was John. He told me that John was looking after that. Q. Did you have any further conversation at any time with Mr. Clem Hedges? A. No, sir.'' On cross-examination, he testified as follows: ''Q. Now, when you called up Mr. Hedges, Clem Hedges, or called up rather J. W. Hedges and got Clem Hedges, did you say that Clem Hedges answered you over the phone? A. No, I couldn't swear; I didn't see him. Q. Did you recognize his voice? A. He told me it was Clem Hedges. Q. Did you recognize his voice? A. I never spoke with him over the phone before. Q. Would you swear the party told you it was Clem Hedges? A. Yes, sir. Q. You are aware of the fact that Mr. Hedges has several sons, are you not? A. Yes, sir. I don't know any of them but I understand he has.

Q. You will please state just exactly what Mr. Hedges said at that time.  A. I called up and I asked if it was J. W. Hedges, and he said, 'No, it is Clem.'  I says, 'Mr. Hedges,' I says, 'I have a trade for some stuff in Missouri for that 160 acres of yours down there southeast of Meridian.'  And he says, 'I don't know anything about it,' he says, 'In fact, John is looking after it.'  He did not say 'In fact'; he says, 'I don't know anything about it'; he says, 'John is looking after that end of it.' ''

The foregoing is the evidence given by Tonkin with reference to his telephone conversation with the respondent Clem Hedges.  Clem Hedges testified in the case and denied positively that he had any conversation over the telephone with Tonkin.  It will be observed that Tonkin's telephone call was put in for J. W. Hedges and not for Clem Hedges, and that when he went to talk over the phone he supposed he was talking with J. W. Hedges until the party with whom he was talking advised him that it was not J. W. Hedges but stated that he was talking with Clem.  Now, it will be observed from the foregoing testimony that there was not a scintilla of evidence given which identified the party with whom Tonkin talked as being Clem Hedges.  The call was put in for J. W. Hedges, and when the call was responded to and Tonkin went to the phone, he went in reply to his call for J. W. Hedges, and he says that he does not know with whom he talked; he did not recognize the voice, and that the only information he has as to the identity of the party with whom he was talking over the phone is the statement that the party made that it was Clem Hedges that was talking.  On the other hand, Clem Hedges comes onto to the witness-stand and swears positively that he never talked with Tonkin and that he was not the party who responded.  *There is no identification whatever of the party talking in this kind of evidence.*

I think the case of *Wolfe v. Missouri Pac. Ry. Co.*, 97 Mo. 473, 10 Am. St. 331, 11 S. W. 49, 3 L. R. A. 539, from which my associate quotes, correctly states the law, but the facts of that case were widely different from this case.  The conversation there had was with a business house and the call was

put in for the company's office. There was no question in the case but that the conversation was had with the business office of the company, and the conversation was concerning business in which the company was interested. The court held that under those circumstances the presumption would arise that the party answering the call was an agent or employee of the house, and had authority to speak for the company concerning the business in which it was engaged.

Mr. Chamberlayne, in his work on the Modern Law of Evidence, vol. 1, sec. 794, after quoting from the Wolfe case, makes the following comment: "*E converso,* where this fact of connection with a party's office is absent, more conclusive proof of identification and connection with the party to be affected by a telephone conversation may properly be demanded by a presiding judge. Thus, a telephone conversation is inadmissible to establish admissions of one of the parties, where it appears that the witness was not acquainted with the party's voice, and could not identify it. Such a case would not be controlled by the decisions which relate to communications by telephone from an office in response to communications or inquiries, and to the presumption which arises from the transaction of business of the person in whose control the telephone is."

*Young v. Seattle Transfer Co.,* 33 Wash. 225, 99 Am. St. 942, 74 Pac. 375, 63 L. R. A. 988, is a leading case on this subject, and is very much more in point on its facts as applied to the present case than the Wolfe case. In the Young case the Washington court analyzes the Wolfe case and points out the distinction between that case and the facts on which they were passing in the Young case, and states what we think to be a very sound rule of law which is applicable here and is as follows:

"When material to the issues, communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face, but the identity of the party sought to be charged with a liability must be established by some testimony, either direct or circumstantial. It is not always neces-

sary that the voice of the party answering, or of either party, for that matter, be recognized by the other in such conversations, but the identity of the person or persons holding the conversation, in order to fix a liability upon them or their principals, must in some manner be shown. To hold parties responsible for answers made by unidentified persons, in response to calls at the telephone from their offices or places of business concerning their affairs, opens the door for fraud and imposition, and establishes a dangerous precedent, which is not sanctioned by any rule of law or principle of ethics of which we are aware. A party relying or acting upon a communication of that character takes the risk of establishing the identity of the person conversing with him at the other end of the line.''

As I understand the law, conversations carried on by means of telephone do not differ in their essential characteristics from those carried on verbally between the parties when face to face. The only difference is the medium through which they converse and the fact that they are at such a distance from each other that they could not make themselves heard in the ordinary conversation and by means of the voice alone. Mr. Jones, in his work on Telegraphs and Telephones, secs. 697, 698 and 699, discusses this question, and in sec. 698 says: ''In order for the rule to hold good, the identity of the person must be shown by the party offering to produce such communication as evidence. This may be done by direct or circumstantial evidence, and it is not necessary that the voice of either person be recognized, but if the identity of the person conversing be shown, this will be sufficient.'' I take it that extraneous evidence or facts and circumstances independent of the conversation may be shown to identify the party with whom the conversation was had. The one essential thing always remains, however, and that is that the party with whom the conversation was had must in some way be identified. It is essential to do this where the conversation is carried on verbally between the parties face to face. In the latter case, however, the identification is much easier, for the reason that the person seeking to identify the other

will, in all likelihood, be able to remember the face and thus establish the identity of the person, while over the telephone he cannot see the party with whom he is talking and must resort to the voice and extraneous means for identification.

In my opinion, there was no identification of Clem Hedges in the present action and no proof that he was the person to whom Tonkin talked over the phone. I do not think the admission of this evidence should call for a reversal of the judgment for the following reason: Independently of this telephone conversation, there were sufficient facts and circumstances submitted to the jury to justify them in concluding that J. W. Hedges was acting for and as the agent and representative of Clem Hedges in negotiating this sale. On the other hand, the evidence admitted touching this telephone conversation did not prove anything, and certainly could not have been the moving cause for intelligent jurors returning a verdict in favor of the respondent.

For the foregoing reasons, I concur in affirming the judgment.

SULLIVAN, J., Concurring.—I concur in the conclusion reached by Mr. Justice Stewart, but am of the opinion that the telephone message referred to should not have been admitted in evidence for the reasons stated in the concurring opinion of Chief Justice Ailshie.

Petition for rehearing denied.