## THOMASSON v. DAVIS.
### No. 11478.

Court of Civil Appeals of Texas. Dallas.
June 30, 1934.

Rehearing Denied Sept. 15, 1934.

Henry Yeager and Pat J. Howe, both of Dallas, for appellant.

J. W. Madden, Jr., of Dallas, for appellee.

BOND, Justice.

This suit was instituted by J. O. Davis against A. R. Thomasson and Elridge Price, upon a promissory note executed by Thomasson to Price and indorsed to Davis.

The note was executed and delivered in consideration of Price agreeing to deliver to Thomasson a formal assignment of royalty interest in an oil and mineral lease on lands in Grayson county, Tex.. Thomasson refused payment, contending that the assignment was never delivered, and that, before Davis purchased the note, Thomasson informed him of the failure of consideration. Davis denied that he had any such notice, and specially pleaded that he was an innocent purchaser in due course. Price entered a general denial,

and, as an indorser, urged cross-action over against Thomasson.

The cause was tried to a jury, and at the conclusion of the evidence the court instructed the jury to return a verdict for Davis as against Thomasson and Price for the amount of the note, interest, and attorney fees. One issue was submitted to the jury, as to whether the consideration for the note had failed, which was answered in the negative. Judgment was rendered in favor of Davis against Thomasson and Price in the sum of $1,317.25, and in favor of Price as against Thomasson in a like amount, with a provision that execution issue first as against Thomasson.

The appellant, A. R. Thomasson, predicates error on the action of the trial court in refusing to permit him to testify that a few days or a week after the execution and delivery of the note he received a telephone call from a party, who represented himself to be J. O. Davis, and, in that conversation, the party asked if he had signed the note, to which Thomasson replied that he had, and further stated that he had not received the royalty assignment, and, unless he did, he had made up his mind that the transaction was a swindle game, in that Price was not going to deliver the assignment, and unless it was delivered he was not going to take care of the note. The caller then represented that he was buying "some stuff with him and that he was sure Price was alright."

Appellant neither in pleading nor evidence denied the execution and delivery of the note to Elridge Price, and there is no contention raised that the note was not given in consideration of a promise by Price to deliver to appellant a royalty assignment on an oil and mineral lease on lands in Grayson county. The sole question hinges on whether the assignment was delivered. In support of this contention, appellant testified, in effect, that he gave the note in consideration of Price agreeing to buy for him a royalty interest in an oil and mineral lease and to deliver to him the assignment, and that the assignment was never delivered. Price admits the agreement, and joins issue with the contention that the assignment was never delivered, testifying that Thomasson executed and delivered the note for the oil interest, to be evidenced by an assignment; that he owned the royalty interest; that he executed the assignment; and that he presumed Thomasson got it. On cross-examination Price testified as follows:

"Q. Had the assignments been delivered at the time you got the note? A. I couldn't say whether they were or not, however, I presume they were, I think Dr. Thomasson delivered them at the time I got the check.

"Q. And you got the check and note and delivered the assignment at the same time? A. Yes, sir, I think that is correct.

"Q. Isn't it a fact that Dr. Thomasson never did get an assignment? A. Well, if he didn't, it was strictly an oversight.

"Q. You are not sure about that? A. No, but my records will show; I know he and Dr. Hill discussed the fact, and Dr. Hill put lots of money with me and had Thirteen or Fourteen Thousand Dollars in this syndicate and I feel pretty sure that they were delivered, or was an oversight.

"Q. How was that stock delivered, by mail or personally? A. If my memory serves me right I delivered it at the time."

■ Appellant being an interested and naturally a biased witness, the court or jury was not compelled to accept his testimony as true. It is a well-settled rule of law in this state that it is the duty of a trial court to construe such testimony, as the court evidently did in this case, in the light of the interest manifested by the witness, the credibility and weight to be given his testimony, as presenting a question of fact for the determination of the jury. This is true, though not contradicted. Briggs v. Briggs (Tex. Civ. App.) 247 S. W. 312; Hinds v. Allen (Tex. Civ. App.) 213 S. W. 671; Pope v. Beauchamp et al., 110 Tex. 271, 219 S. W. 447; Casualty Reciprocal Exchange v. Parker (Tex. Com. App.) 12 S. W.(2d) 536. But, notwithstanding this well-settled rule of law, applicable, we think, to the situation here, we are constrained to hold that appellant's testimony is not wholly uncontradicted. The related testimony of the witness Price, at least as far as his memory could serve him, was that the assignment was delivered; thus forestalling, in any event, the controverted issue as not being one of fact for the determination of the jury.

■■ The jury having found, in answer to the issue submitted, that the consideration for the note had not failed, thus establishing an enforceable obligation on appellant as to the payee Price, we think the exclusion of the telephone conversation becomes an immaterial matter. At most, the proffered telephone conversation would visit only notice to the assignee of a claimed defense to the note, which the jury found did not exist. Therefore, if the defect in the note fails as to the payee Price, so also does it fail as to his assignee Davis. The note having been indorsed to Davis, he thus became subrogated to all the rights of the original payee.

Even if the conversation had been admitted in evidence and the jury had found in response thereto that Davis had notice that Thomasson was claiming that the consideration for the note had failed, the judgment would not have been affected by the conversation or the finding of the jury on such issue. The conversation was only admissible on the question of notice, and could not in any way have affected the jury's findings as to whether the consideration had failed. On that issue, evidently the conversation was not relevant, material, nor competent, was a self-serving declaration, and not admissible.

While we do not think any error was committed by the trial court in the exclusion of the evidence without proof of some identification of the party calling, its exclusion by the trial court is certainly harmless and is not cause for a reversal of this case.

█ Furthermore, it seems to be well settled in this state that, a party calling another by telephone, through the medium of the telephone exchange, calling or dialing the number listed for the connection, the identity of the party called is thus presumptively established, and the conversation presents a rebuttable presumptive issue that the party called is the party intended; but, where a party is called over the telephone, and in the conversation the party calling presents nothing by which the identity of the person calling can be made by the person called, and his voice is not recognized and no other fact or circumstance is presented except what the party calling relates himself, such conversation is purely and simply hearsay. It is also true, where the party calling does relate facts or circumstances tending to show, or, by the related facts and circumstances, his identity may thereafter be proven, the conversation is competent evidence to show that the call came from the person he claimed to be.

█ In the conversation, the party calling asked about the signing of the note, and only related that "he was buying some stuff with him," meaning, of course, that the caller was buying some property with Price. The witness did not and could not recognize the voice as being that of Davis, and no other fact or circumstance was related by which his identity could be established, and, furthermore, there is no evidence that Davis was then buying any property with Price. The only testimony bearing on this point is that two or three months before Davis had purchased some oil properties from Price. In our opinion, there was not sufficient predicate laid to show or raise the issue of identity of the person talking over the telephone as being that of Davis to admit the conversation in evidence. Davis denied any such conversation.

█ Appellant further assigned error on the action of trial court in permitting the jury to take with them into the jury room during their deliberation the deposition of Elridge Price. Appellant presented the assignment as one of the grounds in his motion for new trial. The matter complained of is fully disclosed in a bill of exception incorporated in the record, which reads as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause, on the 16 day of November, A. D. 1932, after the Court's main charge had been prepared and after the plaintiff had been given an instructed verdict as to both the defendants, and after the argument of counsel for Dr. A. R. Thomasson and Elridge Price, defendants herein, the jury retired to the jury room for their deliberation and to consider their verdict; that after said jury had been in retirement about an hour there was a knocking at the jury door and the bailiff attending the jury answered said rapping and was advised by the foreman that the jury wanted something; that the Court then instructed the bailiff to bring the jury into open Court and the Court, from his seat on the bench, inquired of the jury, who were then seated in the jury box, what it was they wanted; that the foreman of the jury told the Court that the jury wanted certain instruments which had been introduced in evidence; that the Court informed Mr. Pat Howe and Mr. Henry Yeager, attorneys for Dr. A. R. Thomasson, that the jury desired certain instruments which had been offered in evidence; that Mr. Howe and Mr. Yeager were both in the courtroom at the time the jury came into open Court and took their seats in the jury box; that upon the statement by the Court that the jury wanted certain instruments, Mr. Pat Howe arose from where he was sitting in the back of the court room and advised the Court in open Court that Mr. D. A. Frank, attorney for Elridge Price, and Mr. J. W. Madden, Jr., attorney for J. O. Davis, had gone to their respective offices and that Mr. Madden had the original note in his file and that the same was not available in Court, but that a copy of said note was attached to the deposition of Elridge Price and that he (Mr. Pat Howe) had the deposition and receipt in his brief case; that Mr. Pat Howe then came forward to the counsel table and opened his brief case and obtained therefrom the said receipt and

deposition and handed same to the Court, who was seated on the bench, and then turned and walked back to join his co-counsel, Mr. Yeager, who was seated in the rear of the courtroom. The Court then handed to the foreman of the jury the papers which had been furnished him by Mr. Pat Howe, and the jury arose from their seats in the jury box and started walking back to the jury room. That Mr. Henry Yeager and Mr. Pat Howe remained in the courtroom during this proceeding and continuously from the time the jury came into open court and took their seats in the jury box until the jury returned a verdict in the case; that Mr. Howe and Mr. Yeager, the attorneys for the defendant, Dr. A. R. Thomasson, did not know that the deposition of Elridge Price had been handed to the foreman of the jury until the foreman of the jury had received the same and the jury had left their places in the jury box and were walking from the jury box to the jury room; that the first knowledge the attorneys for the defendant, Dr. A. R. Thomasson, had that the deposition of Elridge Price had been delivered to the foreman of the jury resulted from Mr. Howe seeing the deposition in the hands of the foreman of the jury, while the jury were in the courtroom and while the jury were walking to the jury room; that said attorneys for the defendant, Dr. A. R. Thomasson, had ample time after they saw that the deposition was being carried to the jury room by the foreman of the jury to have objected to the same being taken into the jury room, and had such an objection been made the Court would have had ample time to have stopped the jury and prevented said deposition from being taken into the jury room, but neither of said attorneys made any objection or took any exception to said deposition's being taken into the jury room at the time the same was taken therein, nor afterwards, when the jury returned its verdict, nor at any time thereafter, and the matter was first called to the Court's attention by the filing of the amended motion for new trial; that Mr. D. A. Frank, attorney for Elridge Price, and Mr. J. W. Madden, Jr., attorney for plaintiff, J. O. Davis, retired to their respective offices from the courtroom immediately after the argument of counsel, and never returned to the courtroom while the jury was in deliberation, nor were they, or either of them present when the facts and matters set out in this bill of exception occurred.

"That one of the instruments which was handed to the jury by the Court was the deposition of Elridge Price, which was actually taken into the jury room and portions of same read by the jurors therein."

In a mandatory statute, article 2193, R. S., depositions of witnesses are forbidden to be carried by the jury in their retirement, and it is generally held that courts will not speculate as to the hurt the violation of such rule may cause to an aggrieved party. However, the violation of a provision of a mandatory statute prescribing procedure in the trial of causes does not necessarily present reversible error. There is no doubt but that a litigant may waive such forbidden provision and/or so conduct himself as to invite the error. Trial judges, in unguarded moments, may, and ofttime do, violate some rule of procedure. It is not so much a matter of comity and courtesy as of paramount duty of an attorney, who is an officer of the court, to forewarn the judge of an impending error and to aid and assist him in his efforts to administer fairly the affairs of the court, and to prevent errors in trial.

In this instance, it would not have been amiss for the attorneys, who were present in court, to have called the judge's attention to the forbidden statute, or to raise an objection to the action of the court in allowing the deposition to be taken into the jury room, or to call the judge's attention to the fact that the attorneys on the other side of the controversy were not present, and their consents were necessary before the deposition could be legally taken by the jury in their retirement. The situation, in our opinion, did not present a necessity for the attorneys present to bluntly state in the presence of the jury that the law does not allow the privilege asked, or that their client refused to accord them the favor demanded.

A litigant is not permitted to remain silent or to invite the court to err, as here, when, to an orderly process of trial, his duty demanded that he speak. He is not allowed to speculate on the result of an error of the trial court known to him and/or brought about by his own silence, and which easily could have been prevented, and then, when the error was committed, on motion for new trial, complain because of his own derelict or invitation. We are of the opinion that the matter as revealed in the quoted bill of exception does not warrant this court to reverse the case.

We have considered all assignments of errors presented, they are expressly overruled, and, for what we have said above, the judgment of the lower court is affirmed.

Affirmed.