Argued September 11; affirmed October 2, 1934

# STATE *v.* SILVERMAN

(36 P. (2d) 342)

*John P. Hannon,* of Portland (Frank J. Lonergan, of Portland, and J. L. Foote, of St. Helens, on the brief), for appellant.

*John L. Storla,* District Attorney, of St. Helens, for the state.

BEAN, J. The defendant, Jacob Silverman, was indicted by the grand jury of Columbia county, Oregon, charged with the crime of murder in the first degree, for the killing of one James Walker on April 21, 1933. He was thereafter tried and convicted of the crime of manslaughter, and sentenced to serve three years in the penitentiary and pay a fine of $1,000. Defendant appealed.

On Saturday, April 22, 1933, the bodies of James Walker and Edith McClain were found near a rock bunker on the Otto Miller road in Columbia county, Oregon. James Walker, an ex-convict, was suspected of shooting Frank Kodat, a speak-easy and rooming house owner, at 711 East Water street, Portland, Oregon. The shooting occurred between 9 and 10 o'clock a. m., Friday, April 21, at the speak-easy, while Kodat was lying drunk on his bed, the shot being fired through the wall from an adjoining room. Whether the shooting was accidental or intentional has not been established. Defendant Silverman was a friend and customer of Kodat. The defendant learned of the shooting about 10 o'clock that morning. He had drunk considerable liquor the previous three or four days, and

that afternoon drank some hard liquor and beer and complained generally about his drunken condition. After the shooting of Kodat, one Abe Levine, his bartender, was taken to the Portland police station for questioning, and the defendant and his brother, Maurice Silverman, proceeded to the police station and succeeded in getting Abe Levine's release on the condition that Levine and the defendant would attempt to find James Walker. Levine denies making any attempt to ascertain where Walker was. Levine's release was effected at 4:30 p. m., and, in company with defendant and his brother, he left the jail about five minutes thereafter. Defendant states that he proceeded to the office of Frank Barry, just across the street from the police station. Mrs. Barry testified he may have arrived there 20 minutes before 5 o'clock p. m. Defendant testified that he then visited several places to find James Walker, but without success.

■■ The first assignment of error relates to the ruling of the court in permitting the witness, Maurice Silverman, called by the state, to give testimony, over the objection of defendant, concerning a certain telephone call in regard to the defendant's automobile to the effect that defendant had tire trouble and a request for the witness to come over and get the car and fix it. The objection by defendant is that it was first necessary to show that the telephone call was made by the defendant or at his request, or by some one authorized to act for or in his behalf, citing *State v. Day,* 22 Or. 160 (29 P. 352); *State v. Rader,* 94 Or. 432 (186 P. 79); *State v. Stone,* 111 Or. 227 (226 P. 430); *People v. Dixon,* 94 Cal. 255 (29 P. 504). However, the identity of the person who originates the telephone call may be established either by direct or circumstantial evidence:

*Johnston v. Fitzhugh,* 91 Or. 247, 250, 254 (178 P. 230; *De Lore v. Smith,* 67 Or. 304, 307 (132 P. 521, 136 P. 13, 49 L. R. A. (N. S.) 555, 71 A. L. R. 7, 30, et seq.); annotation L. R. A. 1918D, 723; Jones on Evidence (2d Ed.) 1478, 1479. The meat of the rule as to the admissibility of evidence of a telephone conversation has been well stated, as shown in annotation 71 A. L. R. 7, quoting from 1 R. C. L. 477, as follows:

"Communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face. But the identity of the party against whom the conversation is sought to be admitted must be established by some testimony, either direct or circumstantial; * * *. Slight circumstances will suffice for this purpose, however; and in case of conversations about business affairs, the rule seems to authorize the admission of the evidence without preliminary proof directed at identification of the voice."

■ The testimony on the part of the state tended to show that on Saturday, April 22, the defendant and his car were found at Frank Kodat's place on Water street. Police officers requested him and two others to accompany them to the police station for questioning. Before leaving Kodat's place, at about 11 o'clock a. m., the defendant locked his car, taking the keys with him, which he later surrendered at the station. At about 2:45 p. m. the deputy district attorney commenced questioning the defendant. He was asked: "Who did you send over after your car awhile ago?" He answered: "My brother", and later qualified it by stating that he just asked him to go over and see if his car was still there. The request was made by telephone. It is indicated that the defendant had a telephone conversation with his brother regarding his car and that he sent his brother

after the car. At that time he had the car keys in his possession. Defendant's brother, Maurice Silverman, testified that he received one telephone call regarding his brother's car, that "A call came over and asked if this was Silverman. I said, yes. He said, your brother has some tire trouble over here on Water street come over here and get the car and fix it up." It is apparent that the car belonged to the defendant or was in his custody and control, it being registered in the name of his wife, and the circumstances indicate that the directions to his brother were made by or for the defendant. The circumstance is of but little consequence, however, and we think there was no error in admitting the testimony. In *Johnston v. Fitzhugh,* supra, at page 253 of 91 Or., was said by Mr. Justice BURNETT:

"The objection to statements made over a telephone to an unseen party, goes not so much to their competency as to their weight, and in most of the precedents on the subject this idea is given prominence. Whether the conversation and participants are identified, must in the nature of things depend upon the circumstances of each case, where there is no direct statement that the voice of the individual at the other end of the line was recognized. But the principle is that the identfication of the parties and the conversation may be proved, not only by direct, but also by circumstantial evidence." See also *St. Paul Fire & Marine Ins. Co. v. McQuaid,* 114 Miss. 430 (75 So. 255).

At the close of the introduction of all the testimony, defendant moved the court for a directed verdict of not guilty, and the refusal thereof is assigned as error. It is contended by defendant that there was no competent evidence connecting the defendant with the crime charged in the indictment. Therefore it becomes necessary to examine the evidence somewhat in detail.

 The evidence on behalf of the state tended to show that James Walker and Edith McClain registered as man and wife at the Norris hotel, 17th and Washington streets, and were there on the afternoon of April 21, 1933. Edith McClain had been living with Frank Kodat but left him on April 21. Daniel Young, proprietor of the Norris hotel, testified that shortly before supper on April 21, he saw Walker and Edith McClain together with three men get into a large car that looked like the Silverman car, and drive away from the 17th street entrance of the hotel, and that the driver of the car resembled the defendant as to size and shape. It was shown that the Young family had supper that evening about 5:15 o'clock p. m.

Arthur Brown, who had known the defendant for over two years, was standing across the street from the 17th street entrance of the Norris hotel at about 5 o'clock that Friday afternoon and saw the defendant and a small woman and three men get into a car that resembled the picture of defendant's car, the defendant occupying the driver's seat. The time was fixed as between 5 and 5:15 o'clock p. m., according to the testimony of W. B. Torrence, who came upon the ground at that time, and he observed the car driving away. Torrence noticed that the car was full and that it was a maroon-colored Studebaker. It is shown that Edith McClain was a small woman. On Friday evening, April 21, seven witnesses, situated on Dutch Canyon and Otto Miller roads, in Columbia county, saw a car that answered the description of defendant's car proceeding in the direction of the rock bunker between 6:40 and 7 o'clock, the most of them setting it at 7 p. m. Four witnesses stated that the car was maroon-colored; one called it brown, one reddish brown, and another said it

was a dark-colored car. Six of these witnesses testified that the car looked like the picture of defendant's car introduced in evidence.

Mr. W. A. Quick, who lived about 700 or 800 feet, by air line, from the rock bunker, was standing about 20 feet from the road as a maroon-colored car containing four men and a woman passed him on the Otto Miller road, which is an extension or branch of the Dutch Canyon road, at about 6:40 p. m., going toward the rock bunker which was out of his view. The woman was sitting in the rear seat and was struggling. A few minutes thereafter he heard three shots that he was sure of, and shortly after this same car returned at a high rate of speed with the three men and no woman. Shooting in that vicinity was not uncommon. The rock bunker is 25 miles from the courthouse in Portland. All but five miles of that distance is paved highway. That Friday evening, about 9 o'clock, defendant, accompanied by his nephew, Mendel Feinberg, drove his car into the Earl Super-Service Station at Union and Davis streets, Portland, for washing and greasing, where his car had been washed once or twice a month for the past year. On Saturday morning, April 22, as stated, the dead bodies of James Walker and Edith McClain were found on the Otto Miller road in Columbia county, the bodies lying a few feet from the left side of the road opposite the rock bunker which is on the right side of the road, going up the road from the paved highway. Walker was shot through the heart and head; Edith McClain through the right arm and face—indicating that neither committed suicide. To the right of the road, opposite the dead bodies, were two parallel automobile tracks in sandy clay soil, being the only tracks on that side of the road. Plaster of paris casts

were made of the automobile tracks at the rock bunker, which are exhibits in the case. The defendant stated that the car he drove was a Studebaker President, 1930 model, maroon-colored and equipped with five Gates tires that he purchased from Gill Automotive Service Company. He stated that the clutch was slipping and that he was going to take it to Gill's that day, Saturday, April 22, but that he had not yet called them up. A few days later, in the Multnomah county jail, Sheriff Pratt testified that his conversation with defendant was as follows: "Jake, what have you been doing? He said, 'The newspapers were all wrong in their stories. That no one had called the garage, but himself and that he called in regard to changing the disc in his clutch'."

The testimony of two automobile mechanics who examined defendant Silverman's car was to the effect that the clutch was in good order. The testimony strongly tends to show that on the evening of that day, April 21, 1933, no person, other than defendant himself, drove the defendant's car.

The defendant's car was equipped with five Gates Vulco tires, each bearing a serial number, having been purchased from the Gill Automotive Service Company, Portland, Oregon, August 29, 1932. All of the tires were introduced in evidence as exhibits. The right rear tire, State's Exhibit T, bears the serial number A-3262189, and this tire bears certain identifying cuts, bruises and abrasions. The plaster of paris casts, taken at the scene of the killing, show cuts, bruises and abrasions corresponding to those on the tire. Photographs of the casts and a photograph of a portion of a tire were also introduced in evidence.

The testimony produced by the state, if believed by the jury, presented to them a picture of the defendant driving from Portland and up the Dutch Canyon and Otto Miller roads with three other men and a small woman, answering the description of Edith McClain. In a short time, after they barely passed out of sight, shots were heard, and in a few minutes the defendant and his car, with two men and no woman, returned down the Otto Miller and Dutch Canyon roads. Of course, no one saw the fatal shots fired, but the testimony strongly indicates that they were fired by one of the three persons returning and that the defendant was aiding and abetting in the crime and endeavoring to conceal and cover up the same, and was guilty of the crime of which he was convicted. There was no error in denying the motion for a directed verdict.

■ The court will not consider the weight of the evidence where there is substantial, competent evidence to support a verdict, it being exclusively the function of the jury to consider such weight: Oregon Const., Art. VII, § 3; *State v. Glasburn,* 116 Or. 451 (241 P. 846); *State v. Mageske,* 119 Or. 312 (227 P. 1065, 249 P. 364); *State v. Broom,* 119 Or. 469 (249 P. 361).

■■ After the court had instructed the jury, the jury retired for deliberation and then returned to the court room for further instructions, and defendant assigns that the court erred in instructing the jury as follows:

"I instruct you that all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, or whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission are principals in any case so committed. For one person to abet another in the commission of a

criminal offense simply means to knowingly and with criminal intent aid, promote and encourage or instigate by act or counsel or both by act and counsel the commission of said offense.

"The defendant in this case is to be convicted, if at all, upon proof satisfactory to yourselves beyond a reasonable doubt that he either personally committed this crime or that by some positive and affirmative act of his own he aided and abetted in its commission."

to which instructions the defendant saved an exception. The objection is based upon the contention that there is not a scintilla of evidence that the defendant ever aided, abetted, assisted or counseled any one in the commission of this crime.

Our statute, section 13-724, Oregon Code 1930, abrogates the distinction between an accessory before the fact and a principal and between the principals in the first and second degree in cases of felony, and provides that "all persons concerned in the commission of a felony, whether they directly commit the act constituting the crime, or aid and abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of a misdemeanor". See also § 14-1002, Oregon Code 1930.

The testimony, as we have already stated, tended to show that the defendant conveyed the two victims, James Walker and Edith McClain, and two other men to the place where the crime was committed and conveyed himself and the two men from that place, back down the road toward the highway. Whether the defendant himself fired the fatal shots, circumstantial evidence strongly indicates that he was present and concerned in the commission of the crime, and aided

and abetted in the commission thereof. The instruction, therefore, given by the court, was proper and was not erroneous. An instruction on the issue of aiding and abetting is justified if the fact may reasonably be inferred from circumstances proved. Positive testimony is not required: *People v. Peete,* 54 Cal. App. 333 (202 P. 51, 62, 63); *People v. Wong Hing,* 176 Cal. 699 (169 P. 357, 359); *People v. Marx,* 291 Ill. 40 (125 N. E. 719).

A careful reading of the testimony and the record leads us to believe that there was no error committed upon the trial of the cause.

The judgment of the circuit court is, therefore, affirmed.