498 P.2d 1276

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Dennis MARLAR, aka Denzil Marlar, Defendant-Appellant.**

**Nos. 10588, 10635.**

Supreme Court of Idaho.

June 20, 1972.

---

Webb, Tway & Redford, Boise, for defendant-appellant.

W. Anthony Park, Atty. Gen., Charles P. Brumbach, Asst. Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Two appeals arising out of the prosecution of defendant-appellant Dennis Marlar, aka Denzil Marlar, were consolidated for presentation to this court. The first involved the propriety of the district court's dismissal of appellant's original appeal due to his alleged failure to diligently perfect the appeal; the second concerns the merits of appellant's conviction for assault with a deadly weapon, specifically whether a telephone call allegedly made by appellant to the complaining witness (Higgins) was erroneously admitted into evidence.

Both parties agree that the motion to dismiss appellant's appeal was improperly granted by the district court. When the notice of appeal is timely filed by the appellant, as was the circumstance here, the Supreme Court thereupon acquires jurisdiction and the district court is divested of jurisdiction to render any orders in derogation of such appeal. *See* Stout v. Cunningham, 29 Idaho 809, 162 P. 928 (1917); Coeur d'Alene Turf Club, Inc. v. Cogswell, 93 Idaho 324, 329, 461 P.2d 107 (1969). Since both parties are cognizant of this

rule, and acquiesce to its application in the case at bar, we decline to comment further on the issue of the propriety of the district court's dismissal of the appeal, stating only that such dismissal was error.

We direct our attention to the substantial issue requiring disposition herein—whether prejudicial error was committed by the trial court in admitting into evidence the import of an alleged telephone conversation between appellant and the complaining witness Higgins, wherein appellant allegedly stated that he would "put you [Higgins] in the morgue." A brief scenario of the criminal event is necessary to provide the context in which the telephone conversations were introduced into evidence against appellant.

James Higgins, the prosecuting witness, spent the evening of October 26, 1968, consuming alcoholic beverages and conversing with appellant's wife, who was working as a waitress at the Eagles Lodge in Boise. After the Lodge closed, Higgins and appellant's wife left through the back door and entered her car which was parked in the parking lot at the rear of the Lodge.

The testimony indicates that they were conversing, and possibly embracing, when appellant drove his pickup truck into the back of his wife's car. Appellant's wife immediately left the scene; Higgins and appellant alighted from their respective vehicles and approached each other, meeting at the intersection of the vehicles. According to Higgins' testimony, appellant accused him of being with appellant's wife, to which Higgins responded that he was not with anyone's wife. At this retort, appellant allegedly swore at Higgins, hit him on the head, apparently with a gun, and warned him he had until the count of three to vacate the premises. Since appellant was allegedly pointing a gun at Higgins when he issued the ultimatum, Higgins quickly left by the shortest route. Higgins immediately contacted the police, who apprehended appellant some time later in the parking lot of the Lodge. A gun belonging to appellant containing two bullets was seized by the arresting officer from appellant's vehicle, after appellant had informed the officer where the weapon was located. Both the pistol and the bullets were introduced in evidence.

At the trial, the only account of the alleged assault was given by Higgins. Neither the appellant nor his wife testified. After relating his version of the attack, Higgins was examined by the prosecution concerning certain telephone conversations between appellant and Higgins:

"Q. Since the time this action was filed, this criminal complaint has been filed against Mr. Marler (sic), have you had occasion to talk with him?

A. Several times on the phone; once in Justice Court

Q. Did he advise you when he called who he was?

A. Oh, yes.

Q. Could you tell us what the substance of some of those conversation (sic) with him were?"

At this juncture, appellant's counsel registered objections that there was no proper foundation to link the conversations with the particular case, and that anything that had occurred subsequent to the alleged assault would not be competent. Counsel also complained that the "when and where" of the conversations were not established. After the court overruled each objection, the examination proceeded:

A. Well, it was at different periods of time that he called. Several times while I was at work; several times at home. The first three or four times was just to request that I either get in touch with his attorney or the prosecutor, which I did, and

. . .

Q. For what purpose, did he say?

A. Towards dismissing the charges.

Q. I see. In other words, he asked you if you would get in touch with us so that we would dismiss the charges?

A. That's correct.

Q. Did he ever call you at 2:30 in the morning on one occasion?

A. Yes, sir.

Q. You remember what the substance of that conversation was?

A. Essentially that the manner in which the parties involved were going to testify and that I responded to saying that 'that just however they testified would have to be the way they testified,' and I said that 'I didn't want him calling my home anymore,' and he said profanity and then 'I'll put you in the morgue.'"

Appellant challenges in two respects the admittance of the substance of this conversation, particularly the testimony that appellant threatened to put Higgins in the morgue. Appellant contends first that the call was not properly authenticated; and, second, and in any event, that the import of the alleged conversation is not relevant to the case at hand. Although the objections of appellant's trial counsel were not perfect formwise, they were sufficient to preserve the issues raised on appeal.

*Authentication*

■■ Subject to the requisites of relevancy, the hearsay and other evidentiary rules, testimony relating the substance of a telephone conversation may be admissible evidence. With regard to such admissibility, the general rule is stated:

"The admissibility of telephone conversations is governed by the same rules of evidence which govern the admission of oral statements made in face-to-face conversations, except that *the party against whom the conversation is sought to be used must ordinarily be identified.*" 29 Am.Jur.2d Evid., § 380, p. 431 (1967). (Emphasis added.) *See* Tonkin-Clark Realty Co. v. Hedges, 24 Idaho 304, 133 P. 669 (1913).

■■ In regard to adequately identifying the party placing the call,[1] for purposes of introducing the import of the caller's conversation into evidence against him, the most usual if not the most reliable mode of identification is the recognition of the caller's voice by the witness (the party called) who intends to relate the conversation. *E.g.*, State v. Peterson, 2 Wash.App. 464, 469 P.2d 980 (1970); Liberty-Mutual Ins. Co. v. Preston, 399 S.W.2d 367 (Tex. Civ.App.1966); New York Life Ins. Co. v. Silverstein, 53 F.2d 986 (8th Cir. 1931); People v. Goodman, 159 Cal.App.2d 54, 323

---

1. Several jurisdictions recognize that the identification required is measured by different rules depending on whether the party against whom the conversation is sought to be introduced is the caller or the party called. Meyer Milling Co. v. Strohfeld, 224 Mo.App. 508, 20 S.W.2d 963 (1929).

"Where one calls another by telephone, through the medium of a telephone exchange, calling or dialing the number listed for the connection, the identity of the party called is thus presumptively established, and the conversation presents a rebuttable presumptive issue that the party called is the party intended; but that where a party is called over the telephone, and in the conversation the party calling presents nothing by which the identification of the person calling can be made by the person called, and his voice is not recognized, and no other fact or circumstance is presented except what the party calling relates himself, such conversation is purely and simply [inadmissible] hearsay." Annot. 105 A.L.R. 326, 332

(1936) (citing Thomasson v. Davis, 74 S.W.2d 557 (Tex.Civ.App.1934).

In Tonkin-Clark Realty Co. v. Hedges, 24 Idaho 304, 133 P. 669 (1913), the call was placed by the witness for a "J. W. Hedges" and the party answering responded that it was not "J. W." but was Clem Hedges speaking. The court, almost in passing, noted that the telephone conversation was properly admitted since the statement of identity, plus the other circumstances in the case justified the admittance. Tonkin-Clark Realty Co., *supra*, at 308, 133 P. 669. *But see* Tonkin-Clark Realty Co., *supra*, at 311–313, 133 P. 669 (Ailshie, J., concurring). The authentication issue in the case at bar, where the party is allegedly the caller, is one of first impression in this jurisdiction. It should be noted that neither courts nor authorities have drawn a distinction dependent upon whether the case is civil or criminal. The same rules apparently apply in either type of case. *See, e. g.*, McCormick, *supra*, 405–06; Annot. 71 A.L.R. 5 (1931); Annot. 105 A.L.R., *supra*.

P.2d 536 (1958). *See* 29 Am.Jur.2d, *supra* at § 383. In the absence of voice recognition, it is generally agreed that the mere statement of his identity by the caller is insufficient proof of the caller's identity. *E. g.,* Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771 (Tex. App.1941). *See* C. McCormick, Law of Evidence, 405–06 (1954); Annot. 71 A.L. R., *supra,* at 31–34; Annot. 105 A.L.R., *supra,* at 332–34. Corroboration of a statement of identity by the caller sufficient to render the conversation admissible against him may be supplied by evidence, (*See* Annot. 71 A.L.R., *supra,* at 7) (1) that the subject matter of the call revealed that only the named party would likely have knowledge of those conversational facts; Zimmerman v. Associates Discount Corp., 444 S.W.2d 396 (Mo.1969); People v. Erb, 235 Cal.App.2d 650, 45 Cal.Rptr. 503 (1965); National Aid Life Ass'n v. Murphy, 78 S.W.2d 223 (Tex.Civ.App.1935); People v. McGaughran, 197 Cal.App.2d 6, 17 Cal.Rptr. 121 (1962). *See* Kansas Electric Supply Co. v. Dun & Bradstreet, Inc., 448 F.2d 647 (10th Cir. 1971). Or (2), of other confirming circumstances which make it probable that the named person was, in fact, the speaker. *See* Kansas Electric Supply Co. v. Dun & Bradstreet, Inc., *supra;* Andrews v. United States, 78 F.2d 274 (10th Cir. 1935); Miller v. Liles, 230 Or. 475, 370 P.2d 217 (1962); King v. State, 80 Nev. 269, 392 P.2d 310 (1964); State v. Bates, 52 Wash.2d 207, 324 P.2d 810 (1958). *See also* Annot. 71 A.L.R. 5, 40–53; Annot. 105 A.L.R. 326, 332–37; McCormick, *supra,* 405–06.

■■ The identification may be by either direct or circumstantial evidence. In Oregon it has been held that "[s]light circumstances will suffice for this purpose." State v. Silverman, 148 Or. 296, 36 P.2d 342, 343 (1934). *See* State v. Glisan, 2 Or. App. 314, 465 P.2d 253 (1970). This *de minimus* aspect of the rule concerning the degree of identification necessary should not, however, be too heavily emphasized. In order to adequately identify the party against whom the evidence is sought to be introduced, the circumstance, even though slight, must at least tend to identify the party as the caller. For example, in the landmark case of State v. Silverman, *supra,* the "slight" circumstantial evidence placed the defendant and his automobile at a location later referred to by defendant in the telephone call about the car. During questioning at the police station the defendant also admitted talking on the telephone to his brother (the witness relating the conversation) about the car. These circumstances were sufficient for identification of defendant as the caller since they were clearly corroborative.

■ To determine the adequacy of the authentication in the contested conversation in this case, it is necessary to examine the possible corroborative circumstances in light of the above enumerated principles. The testimony of Higgins concerning the telephone calls reveals that the caller did identify himself, ostensibly as appellant. Other circumstances described by Higgins which might provide sufficient corroboration to allow the conversation in evidence include (1) the fact that there were several phone calls purportedly made by appellant, all concerning the same subject—the dismissal of the charges, and (2) a conversation at the courthouse purportedly with appellant also on the subject of encouraging dismissal of the charges. However, it is our conclusion that these circumstances do not sufficiently identify the appellant as the caller in the conversations testified to by Higgins. The responses elicited from Higgins concerning the identity of the caller in no way tie in the appellant as the caller. No attempt was made by the prosecution to identify the voice of the caller as being appellant's. The subject matters of the conversation, at least so far as disclosed by Higgins, are not such that only appellant would likely have knowledge of the facts. Any interested person could determine that the appellant's case was pending, and make inquiries of the nature revealed by Higgins' testimony. The fact

that there were a series of telephone conversations and a face-to-face confrontation might have provided the necessary link with appellant. However, the prosecution failed to have Higgins identify the telephone voice of the caller and show that the caller in each instance and the person who confronted Higgins at the courthouse had the same voice, speech mannerisms, or other identifying characteristics which would have adequately established that the same person made all the calls and spoke with Higgins at the courthouse. Simply stated, there is nothing corroborative of the bare testimony that the caller said he was the appellant when he telephoned. The evidence of the conversation therefore was improperly admitted by the district court.

*Relevancy*

 There is another reason why the telephone conversation should have been excluded. The substance of the contested telephone call is not relevant to the prosecution of an alleged assault with a deadly weapon. Relevancy, as defined in the Idaho cases, encompasses two main aspects. The first, traditionally denominated "materiality," requires that the issue for which the specific evidence is offered to prove be a material issue in the case. The second aspect of relevancy concerns the probative value of the offered evidence. Evidence offered to prove a material issue in the case is not relevant unless it logically tends to prove or disprove that issue. G. Bell, Handbook of Evidence for the Idaho Lawyer, 101–02 (1957); McCormick, *supra*, at 314–15. See State v. Farris, 48 Idaho 439, 282 P. 489 (1929); Williams v. Idaho Potato Starch Co., 73 Idaho 13, 22, 245 P.2d 1045, 1050 (1952) wherein the court observes, "It is fundamental that evidence, to be admissible, must relate to and be confined to the matter in issue."); Mountain States Telephone & Telegraph Co. v. Jones, 76 Idaho 241, 245, 280 P.2d 1067, 1069 (1955) (wherein the court states, "Evidence offered must meet the test of materiality and relevancy.").

In this instance we are concerned with this second aspect of relevancy, the probative value of the offered evidence as it tends to prove a material fact in the litigation. In other words, we need determine whether the import of the contested call, as portrayed by the prosecuting witness, Higgins, logically tends to prove any material issue in the prosecution for assault with a deadly weapon. The respondent State offers two possibilities of relevance—first, that the evidence tends to establish the then-existing state of mind of appellant or his intent in committing the alleged assault; and second, that the subject matter of the phone calls and the consequent threatening gesture by the caller (I'll put you in the morgue") connotes an implied admission of guilt or consciousness of a weak case. We find neither of these propositions persuasive.

 It is the established rule in this jurisdiction that:

"Prior threats of the accused or evidence of previous trouble are always relevant to illustrate mental attitude of the accused toward the prosecuting witness at the time of the assault." State v. Muguerza, 46 Idaho 456, 460, 268 P. 1, 2 (1928); *Accord* State v. Frank, 60 Idaho 774, 97 P.2d 410 (1939).

Such prior threats may comprise part of the mosaic of the criminal event in that they may tend to establish an accused's attitude toward the victim or an intent to inflict harm upon him. Statements subsequent to the criminal event, such as appellant's alleged remark, "I'll put you in the morgue," are not normally an integral part of the criminal event unless they indicate a state of mind or an intent existing at the time of the commission of the offense. Wigmore on Evidence, 3d Ed. 1940, § 1732, pp. 103–05; *See* State v. Baldwin, 47 N.J. 379, 221 A.2d 199, 208 (1966). Statements which do tend to establish a state of mind of the accused toward the victim at the time of the commission of the offense are admissible in this jurisdiction. Bell on Ev-

idence, *supra*, at 133–34; *See* State v. Muguerza, *supra,* 46 Idaho at 461, 268 P. The crucial issue on relevancy, and hence the admissibility of threats, is the sufficiency of the threat as indicative of the requisite state of mind. *See* State v. Mc-Greevey, 17 Idaho 453, 105 P. 1047 (1909); State v. Fox, 52 Idaho 474, 16 P.2d 663 (1932); *cf.* State v. Rogers, 30 Idaho 259, 163 P. 912 (1917). The statement "I'll put you in the morgue" (even if made by appellant) does not, in itself, tend to establish an intent or state of mind at the time of the commission of the criminal offense. The statement was not linked by any other evidence, as indicia of such an intent. The statement, at most, was an opprobrious remark illustrating the caller's malevolent attitude toward the witness Higgins at the time the statement was made.

Respondent also suggests that appellant's attempts to get the charges dismissed and his inquiries concerning the way the witnesses would testify, followed by the statement about Higgins' prospective placement in the morgue, were relevant to show appellant's consciousness of a weak case as an implied admission that appellant thought he was guilty. We are cognizant of, and adhere to the rule that evidence is relevant which tends to show that the accused has either attempted to fabricate or procure false evidence or to suppress incriminating evidence. *See* State v. Rolfe, 92 Idaho 467, 444 P.2d 428 (1968); State v. Marren, 17 Idaho 766, 107 P. 993 (1910). *See also* Wigmore on Evidence, *supra,* at § 273, pp. 106–09. Considering the context of the statements of the caller, as related by Higgins, they are not sufficiently probative to justify their admission.

Even if we could glean some probative value from the telephone conversation evidence, it would be so slight that its admittance into evidence would not be justified in light of the possible prejudice to appellant. Concerning the admittance of inflammatory testimony it has been stated:

"If allegedly inflammatory evidence is relevant and material to the proof of an issue of fact, the trial court may exercise a sound discretion in determining whether or not the probative value is outweighed by the possible prejudicial effect, and to admit or exclude the evidence accordingly. In such a situation the court must balance the policy of protecting a defendant from undue prejudice, against the rule of logical relevance." State v. Wilson, 93 Idaho 194, 196–197, 457 P.2d 433, 435 (1969). *See* State v. Thomas, 94 Idaho 430, 489 P.2d 1310, 1314 (1971), ("If the evidence has no real bearing on the guilt or innocence of the accused and would be highly prejudicial, then such of course should be excluded.").

Had the evidence only described the inquiries of the caller without relating his threatening gesture concerning putting Higgins in the morgue, the error in admitting it would not have been prejudicial. However, because of the inflammatory effect which the threat might have on the jury, it should not have been admitted. Regarding such inflammatory evidence which serves no probative function, "but serves only to inflame the minds and passions of the jury to the prejudice of the defendant" it is well settled that its admission is reversible error. State v. Wilson, *supra;* State v. Wheeler, 70 Idaho 455, 220 P.2d 687 (1950). The fact that there may have been adequate independent evidence to convict the accused apart from the inflammatory evidence provides no salvation to the prosecution. State v. Johnson, 92 Idaho 533, 447 P.2d 10 (1968). The possible prejudice from the telephone conversation evidence is manifest. From our examination of the record, we conclude that there is no evidence which either cures or attenuates this prejudice.

The judgment of conviction is *reversed,* and cause remanded for a new trial.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.