## DALLAS GAS CO. v. BANKERS' & SHIP-PERS' INS. CO. et al.
### No. 1243.

Court of Civil Appeals of Texas. Waco.
July 11, 1932.

Rehearing Denied Oct. 13, 1932.

Harry P. Lawther and Robert M. Perry, both of Dallas, for plaintiff in error.

Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for defendants in error.

ALEXANDER, J.

This suit was brought by H. M. Maxey, Bankers' & Shippers' Insurance Company, and the Royal Insurance Company against the Dallas Gas Company. The plaintiffs alleged in substance that Maxey carried policies of insurance with the Bankers' & Shippers' Insurance Company and the Royal Insurance Company insuring certain merchandise and other personal property belonging to him against the hazards of fire. It was further alleged that the Dallas Gas Company negligently maintained defective gas pipes about the premises occupied by Maxey, and as a result thereof a large quantity of gas was allowed to accumulate in and under the premises occupied by Maxey, and a fire and explosion occurred damaging and destroying Maxey's property. The insurance companies alleged that they paid to said Maxey the amount claimed by him to be due under said policies, and took subrogation assignments from him permitting the insurance companies to recover from the Dallas Gas Company the amount of loss suffered by Maxey as the result of the fire and explosion, to the extent of the payments made to him by the insurance companies. The insurance companies prayed for a recovery against the gas company for the loss sustained by Maxey to the extent of the amount so paid by them, and Maxey prayed that he be permitted to recover from the gas company the amount of his

loss over and above such payments. A trial before a jury resulted in a verdict for the Bankers' & Shippers' Insurance Company for the sum of $1,467 and the Royal Insurance Company for the sum of $3,189, and that Maxey take nothing. The Dallas Gas Company appealed.

The policies of insurance issued to Maxey insured him against loss by fire, and provided that, in the event of a loss, and if it should be claimed that the fire was caused by the negligence of any other person, the insurance companies, on payment of the loss, should be subrogated to Maxey's rights against such wrongdoer to the extent of the payment so made. The evidence shows that, after the loss, Maxey presented his claims and same were paid by the insurance companies. Maxey then executed and delivered written assignments to the insurance companies assigning to them his claim against the party causing the loss to the extent of the amounts so paid by them. The petition alleged the subrogation agreements as contained in the policies and subsequent assignments thereunder, and further alleged that the loss was caused by a fire and an explosion, but did not allege what amount of damages was caused by the fire separate from the explosion nor that the fire preceded and caused the explosion. The court did not submit to the jury the amount of damages caused by the fire, but submitted only the amount of loss caused by the explosion. The jury found that the loss was caused by an explosion, and that the defendant's negligence was responsible therefor.

The defendant in various ways raises the proposition that the insurance companies were not in position to recover against the defendant for any damages caused by it to Maxey by the explosion alone, disassociated from the fire. Its contention is that, since the policies insured Maxey against loss by fire only, the insurance companies were entitled to subrogation only in the event the loss was caused by a fire and were not entitled to subrogation if the loss was caused by an explosion. It further contends that the subsequent assignments executed by Maxey to the insurance companies were intended merely to carry out the subrogation agreement as contained in the policies, and were not intended to and did not have the effect of transferring to the insurance companies any greater right than they had under the subrogation agreements as contained in the policies, and therefore the insurance companies did not acquire any part of Maxey's right to sue the defendant for a loss occasioned by an explosion.

█ Of course, if Maxey had sued the insurance companies for the loss, it would have been necessary for him to have alleged and proven that the loss was caused by fire, or, if he had sought to recover for a loss caused by an explosion, it would have been necessary

for him to have alleged and proven that a fire preceded and caused the explosion. Northwestern National Insurance Co. v. Mims (Tex. Civ. App.) 226 S. W. 738; Liverpool & London & Globe Ins. Co. v. Currie (Tex. Civ. App.) 234 S. W. 232. However, in this case we do not consider that the insurance companies in their action against the gas company are limited to the cause of action that could have been successfully prosecuted by Maxey against the insurance companies under the policies. Maxey and the insurance companies, by agreements among themselves, have settled the question as to whether the insurance companies were liable to him under the policies. Maxey presented his claims, and asserted that the loss came within the terms of the policies. The insurers paid the claims. Maxey, by accepting payment, impliedly agreed that the claims came within the terms of the policies, and that they were claims to which the insurance companies became subrogated upon payment thereof. This was a matter that they had the right to settle among themselves, and it is of no concern to the wrongdoer who caused the loss that the insurance companies paid a loss which they could have defeated in court. Maryland Casualty Co. v. Cherryvale Gas, etc., Co., 99 Kan. 563, 162 P. 313, L. R. A. 1917C, 487; Iowa State Ins. Co. v. Missouri Southern R. Co., 223 Mo. App. 148, 9 S.W.(2d) 255; Cooley's Briefs on Insurance, vol. 7, p. 6732; Couch, Cyc. of Insurance Law, vol. 8, p. 6649. Moreover, Maxey joined with the insurance companies in the prosecution of this suit, and permitted them to recover from the gas company for the loss resulting to him. He did not appeal from the judgment, and is apparently satisfied therewith. It is of no concern to the gas company that the insurance companies were allowed a greater proportion of the recovery than was due them so long as the judgment is satisfactory to Maxey and the gas company is not required to pay more than the damage caused by it.

Furthermore, Maxey, upon the payment of his claims by the insurance companies, executed and delivered to them written assignments of whatever claim he had against any third party for the destruction of his property, to the extent of the amounts so paid by the insurance companies. His claim against the gas company for the destruction of his property by an explosion was one that pertained to property rights and was therefore assignable. Maxey alone could raise the proposition that he did not intend to assign any part of the cause of action that did not come within the terms of the policies. He was a party to the suit, and is not complaining of the action of the court in awarding the recovery to the insurance companies. The insurance companies as the assignee of Maxey had the right to maintain any cause of

action that Maxey could have maintained against the gas company. St. Louis A. & T. Ry. Co. v. Fire Association of Philadelphia, 60 Ark. 325, 30 S. W. 350, 28 L. R. A. 83; Iowa State Ins. Co. v. Missouri Southern R. Co., 223 Mo. App. 148, 9 S. W.(2d) 255.

■ The building where the explosion occurred was a two-story brick building, with a basement. A drug store was located on the ground floor. Defendant's gas pipes were located under the building and in the basement. The explosion completely collapsed and demolished the building. It was defendant's contention that the explosion was caused by nitroglycerine kept in the drug store, while the plaintiffs contended that it was caused by the accumulation of gas under the building. The defendant introduced expert witnesses to prove that nitroglycerine explodes downward while gas explodes upward. It introduced evidence tending to show that the flooring of the building at the place of the explosion was not totally demolished, and from this sought to draw the deduction that the explosion could not have been caused by gas that had accumulated under the building. The court, over the objection of the defendant, permitted the plaintiff to prove by several witnesses who were in the building at the time of the explosion that they were blown across the street and severely injured and that others were killed in the building. We think this evidence was admissible for the purpose of showing the character and extent of the explosion so as to enable the jury to determine the cause thereof.

■ The court, over the objection of defendant, permitted the plaintiffs to introduce in evidence a photograph of a piece of gas pipe taken from beneath the building. The testimony showed that shortly after the explosion the piece of gas pipe was removed from under the building, and several days thereafter the photograph of it was made. The picture showed a hole in the pipe. There was evidence that removing the pipe and exposing it to the air might have caused the rust scales to sluff off, producing the hole in the pipe at the time the photograph was made. However, the witness who removed the pipe testified that he saw the hole in the pipe immediately after it was removed. He could not say whether it was there before the pipe was removed. We think the photograph of the pipe, although taken several days after the pipe was removed from the building, was admissible especially in connection with the testimony of the witness who removed the pipe that the hole was in it when it was removed from the building. The testimony was admissible for the purpose of showing the condition of the pipe and to enable the jury to determine whether gas leaked therefrom.

■ Claude Allen, a witness for plaintiffs, testified that, when he opened the drug store in the building in question on the morning prior to the explosion, he smelled natural gas, and reported the matter to his brother at about 11 a. m. He testified, over the objection of the defendant, that his brother immediately reported the matter to the gas company. The defendant claims this was error. The same witness testified on cross-examination in answer to questions by the defendant that he told his brother that he had better report the matter to the gas company, and for this purpose his brother went to the telephone and dialed a number and reported the leak; that his brother said over the telephone, "We have a bad gas leak, please send someone out here. * * * Thank you." He testified that he did not know to whom his brother was talking, but that some time that afternoon some men came looking for a gas leak. Other witnesses testified that on that afternoon two white men and a negro from the office of the Dallas Gas Company came into the building and stated that a leak had been reported to the office and that they were there for the purpose of looking for it. They began soaping the pipes and trying to find the leak. The gas company admitted that these men from their office were in the building inspecting the pipes, but claimed that they were making a regular inspection and had not received any notice of the leak. The evidence of Claude Allen that his brother reported the leak to the company was a conclusion of the witness. He could not state what number was dialed. However, in view of the fact that on cross-examination the matter was gone into fully by the defendant, and the witness explained to the jury that he did not know to whom the report was made, we do not deem this reversible error. Allen's brother, who was supposed to have reported the leak, was dead, and there was no one who could testify as to what number was dialed. The fact, however, that a number was dialed and a report of the leak was made, when considered in connection with the fact that the men from the Dallas Gas Company soon appeared on the scene looking for a gas leak, and stating that the matter had been reported to the office, was a circumstance admissible in evidence to show that the defendant actually received the report made by Claude Allen's brother. 17 Tex. Jur. 355.

We have carefully examined all other assignments of error, and do not find any reversible error therein.

**The judgment of the trial court is affirmed.**