T. R. COLBERT V. DALLAS JOINT STOCK LAND BANK OF DALLAS.

No. 7606. Decided April 30, 1941.
(150 S. W., 2d Series, 771.)

*Scarborough & Fly,* of Abilene, for plaintiff in error.

*McCombs & Endress,* of Dallas, for defendant in error.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

This case has been tried twice in district court and for the second time is before this Court. Each trial in district court resulted in the rendition of judgment in favor of plaintiff in error Colbert against defendant in error Dallas Joint Stock Land Bank of Dallas. The Court of Civil Appeals reversed the first judgment of the district court and rendered judgment in favor of the Land Bank. 98 S. W. (2d) 239. This Court reversed

the judgment of the Court of Civil Appeals and remanded the cause to the district court for new trial. 129 Texas 235, 102 S. W. (2d) 1031. The Court of Civil Appeals reversed the second judgment. of the trial court and again rendered judgment for the Land Bank. 127 S. W. (2d) 1004. Writ of error was granted on account of conflicts in holdings on questions of law made by the Court of Civil Appeals in its last opinion with prior decisions of this .Court in this cause upon the same questions of law.

Colbert's suit against the Land Bank is for the· recovery of a commission or compensation for services alleged to have been rendered by him as broker in the sale of a ranch of 8117 acres owned by the Land Bank. The Court of Civil Appeals, in reversing the trial court's judgment and rendering judgment that Colbert take nothing by his suit, held: (1) That Colbert cannot recover on the express contract alleged, because the contract was for procuring a purchaser for the entire interest in the ranch and the evidence offered by Colbert tends to prove no more than partial performance, that is, the procuring of a purchaser for an undivided one-half interest in the ranch; (2) that Colbert cannot recover on quantum meruit the reasonable value of his services, because up to the time the land was sold by the Land Bank he occupied the status of a volunteer, his contract of employment by Gay, assistant vice-president of the Land Bank, being unauthorized; (3) that there is no evidence supporting the jury's findings that the ·president of the Land Bank knew of Colbert's efforts to procure a purchaser of the ranch and that the Land Bank, knowing of such services, accepted the benefit thereof in making the sale of the land; and (4) that there is no evidence to support the jury's finding that Colbert was the procuring cause of the sale of a half interest in the land to Carothers.

By its answers to special issues the jury made the following findings: C. D. Gay (who was assistant vice-president of the Land Bank) employed Colbert to sell .the ranch, agreeing to pay him a commission. Gay had authority from the Land Bank to employ Colbert to procure a purchaser for the ranch. Colbert was the procuring cause of the sale by the Land Bank of an undivided one-half interest in the ranch to Carothers. The president of the Land Bank knew, prior to the selling of the ranch, of the efforts of Colbert to procure a purchaser for the ranch. The Land Bank through its president accepted the services of Colbert in the sale of the ranch. Five per cent. was the usual and customary agent's commission for the sale of land in the

neighborhood of Stamford, Texas, during the spring and summer of 1933.

It is apparent from the issues and from the entire record that the trial court submitted the issues as elements of the cause of action for recovery on quantum meruit. The holding of the Court of Civil Appeals that Colbert proved no cause of action on the contract follows this Court's prior opinion. The other three rulings of the Court of Civil Appeals above stated we find, after examination of the statement of facts and comparison of it with the statement of facts on the first trial, to be in conflict with the holdings of this Court as set out in its prior opinion.

In that opinion the conclusion was expressed that the fact that Colbert was employed by Gay to procure a purchaser of the ranch is relevant in support of the action on quantum meruit as it tends to prove that the services were rendered for the bank, citing Henrietta National Bank v. Barrett, 25 S. W. 456 (application for writ of error refused), and further that if valuable services were rendered by Colbert for the bank and the bank knowingly accepted them or the benefit of them, the value of such services may be recovered on quantum meruit, even though the contract is unenforceable on account of Gay's want of authority to make it or for some other reason.

We quote from Judge Speer's opinion in Rogers-Hill & Co. v. San Antonio Hotel Co., (Com. App.) 23 S. W. (2d) 329, cited in our former opinion:

"The principle is well established that, where one receives a benefit by accepting the services of another, even though performed in pursuance of an invalid or illegal contract, nevertheless such person is bound upon the plainest principles of equity for the reasonable value of such services."

In view of the rules so announced, the fact that Gay was without authority to employ Colbert neither places Colbert in the status of a mere volunteer nor denies him the right to recover on quantum meruit.

The important question in the case is whether the Land Bank, with knowledge of the services performed by Colbert in an effort to procure a purchaser of the bank's land, accepted his services or the benefit of them. The jury found that the Land Bank did so accept Colbert's services and in our opinion its findings are supported by evidence.

The testimony of Colbert as to his efforts to sell the land is in substance the same as that given by him on the first trial.

He testified that after his employment by Gay, who told him the Land Bank would pay him a commission if he should find a buyer for the ranch, he made an engagement with Carothers and took him over the ranch, showing him the fields, the various pastures, the traps, tanks, wells and windmills, explaining to him the depth of the wells, the water they would produce, what crops the fields would make at various times and pointing out to him the good qualities of the ranch; that he told Carothers what Gay said the Land Bank would take for the land; and that a few days after showing the ranch to Carothers, not being able to get Gay on the telephone, he telephoned to Ferguson, president of the Land Bank, and told him about his conversation with Gay, of the proposition Gay had made and that he had shown the land to Carothers; that Ferguson said he would not sell the land on the terms named by Gay, but would accept a substantial cash payment. Colbert further testified that a short time thereafter Riley came to the ranch and he showed Riley the land; that Riley knew about Carothers and that they talked about Carothers; and that Riley told him "they would pay a commission if I helped sell the land."

Riley, who was land salesman for the Land Bank and was present during the trial, being designated by the bank as its representative in the trial, was called to testify by plaintiff in error Colbert. On direct examination he testified that he sold the ranch for $7.00 per acre to Carothers and one Grissom and that the full amount of the purchase money, $58,819.00, was paid to the Land Bank. Only two questions were asked the witness on cross examination. In answer to them he testified that he never paid any commission without express approval of the president of the bank and that he did not tell Colbert he would pay him a commission for selling the ranch. The Land Bank rested without offering any witness or any other evidence than that brought out by the two questions asked Riley on cross examination.

It may reasonably be concluded from the foregoing evidence that the Land Bank, after learning of Colbert's efforts, under his employment by Gay, to sell the Land Bank's ranch to Carothers, accepted and received in its sale of a one-half interest in the ranch to Carothers, the benefit of Colbert's services. The finding that the Land Bank accepted Colbert's services does not rest solely upon the proof of the sale of the undivided one-half interest to Carothers, but upon that fact when considered in connection with Colbert's testimony as to his conversation with Ferguson, Riley's visit to the ranch and the conversation between Riley and Colbert.

The evidence which has been set out is sufficient in our opinion to support also the jury's finding that Colbert was the procuring cause of the Land Bank's sale of an undivided one-half interest in the ranch to Carothers. According to Colbert's testimony, he showed Carothers the ranch, began negotiations for the sale to him and advised the Land Bank of his conversation with Gay and of his efforts to induce Carothers to buy the ranch; and the Land Bank a short time thereafter took the matter into its own hands and availed itself of the fruits of Colbert's efforts by selling an undivided one-half interest in the land to Carothers. There is in such facts basis for the reasonable inference that Colbert was the procuring cause of the sale. Hancock v. Stacy, 103 Texas 219, 227, 125 S. W. 884.

Our conclusion that the Court of Civil Appeals erred in disregarding findings of the jury and rendering judgment for defendant in error makes it necessary that we determine what judgment the Court of Civil Appeals should have rendered. We have for that purpose carefully examined the briefs filed by the appellant and the appellee in the Court of Civil Appeals.

The Land Bank objected to the testimony of Colbert as to a telephone conversation between him and Ferguson, the bank's president, on the ground that there was no proof establishing the identity of the person with whom Colbert conversed. The substance of Colbert's testimony about the conversation is that he put in a call at Stamford for Mr. Hugh Ferguson in Dallas; that after the connection was made the person to whom he talked said he was Hugh Ferguson; that he told Ferguson he had a buyer for the ranch, that he had shown the ranch to Carothers, and that Gay had made him (Colbert) "a proposition on the land, to sell it"; and that Ferguson said he would not sell the land on the terms made by Gay but he would accept a substantial cash payment. Colbert further testified that after his conversation with Ferguson, Riley, land salesman for the Land Bank, came to the ranch, that he showed Riley the land, and that Riley "knew about Mr. Carothers."

■ It was of course necessary to the admission of the testimony as to the contents of the telephone conversation that proof be made of the identity of the person with whom the witness talked. Such proof is most readily afforded and is usually made by testimony of the witness that he recognized the voice of the person with whom he conversed. Missouri Pacific Ry. Co. v. Heidenheimer, 82 Texas 195, 201, 17 S. W. 608, 27 Am. St. Rep. 861; 22 C. J. p. 193, Sec. 160; 20 Am. Jur. p. 336,

Sec. 368; Note 71 A. L. R. pp. 5, 36; Note 105 A. L. R. pp. 326, 334. Colbert did not testify, however, that he recognized Ferguson's voice.

■ The rule requiring proof of identity is subject to the well recognized exception that when a telephone call is made to a business office over a line maintained by it for business purposes, testimony as to a conversation with the person answering the telephone is admissible without further proof of his identity, the presumption being indulged that such person, if he represents that he is the one called, or if he assumes to have authority to receive the message, is the person called or does have such authority, in the absence of proof to the contrary. Merrill v. Southwestern Telegraph & Telephone Co., 73 S. W. 422 (application for writ of error refused) ; Western Union Tel. Co. v. Campbell, 212 S. W. 720; (application for writ of error refused) ; Northern Assurance Co. v. Morrison, 162 S. W. 411 (application for writ of error refused) ; 22 C. J. p. 193, Sec. 160; 20 Am. Jur. p. 335-336, Sec. 367; Note 71 A. L. R. pp. 5, 13-14; Note 105 A. L. R., pp. 326, 330. But Colbert's call to Ferguson is not shown to have been made to Ferguson's place of business or to the Land Bank's place of business.

Colbert testified that the person answering his telephone call stated that he was Hugh Ferguson. While such statement is not of itself sufficient proof of identity to justify admission of the conversation, it will be sufficient for that purpose if corroborated by other facts and circumstances tending to reveal the identity of the person called and answering. National Life Assur. Co. v. Murphy, 78 S. W. (2d) 223; Dallas Gas Co. v. Bankers' & Shippers' Ins. Co., 53 S. W. (2d) 130 (application for writ of error refused) ; American National Bank v. First National Bank, 92 S. W. 439; Thomasson v. Davis, 74 S. W. (2d) 557; 20 Am. Jur., p. 336, Sec. 368; Note 71 A. L. R. pp. 5, 39; Note 105 A. L. R. pp. 326, 334.

In our opinion the identity of Ferguson was by the facts and circumstances to which Colbert testified sufficiently shown to admit the contents of the conversation. The person called and answering the call stated that he was High Ferguson. In the conversation he revealed a familiarity with the ranch owned by the Land Bank and knowledge of the proposal that Gay made to Colbert for the sale of the ranch. Colbert, in the telephone conversation, told Ferguson that he had in Carothers a prospective purchaser and that he had shown the ranch to him. Riley, land salesman of the bank, appeared at the ranch with knowledge about Carothers and thereafter

sold to Carothers an undivided one-half interest in the ranch. The Land Bank offered no evidence in contradiction of Colbert's testimony as to the conversation with Ferguson. Riley, who was a witness on the trial, did not testify to the source of his information about Carothers. In view of these facts and circumstances, the sufficiency of the identification was a question of fact for the jury, and the question was decided favorably to plaintiff in error Colbert by the jury's finding that Ferguson, prior to the selling of the ranch, knew of Colbert's efforts to procure a purchaser.

Error is assigned in appellant's brief in the Court of Civil Appeals to the action of the trial court in overruling its plea of limitation to that part of Colbert's cause of action in which he asserts the right to recover interest. The claim for interest was pleaded for the first time in the third amended original petition, filed more than two years after the suit was instituted. Judgment was rendered by the trial court for $1420.25, awarded by the verdict, together with interest thereon at six per cent. from January 1, 1934.

■ The trial court did not err in overruling the plea. Limitation bars a cause of action. Interest on the principal sum sued for is not a cause of action. Even when a claim for interest must be specially pleaded or prayed for, it still is merely an incident to the principal sum and its recovery is permitted in order that the injured party may be fully compensated. J. B. Preston v. Funkhouser, 261 N. Y. 140, 184 N. E. 737, 87 A. L. R. 459, affirmed in 290 U. S. 163, 78 L. ed. 243. The addition of a claim or prayer for interest enlarges the amount sought to be recovered, but adds no new transaction, occurrence or fact. For these reasons the plea of limitation should have been overruled even if the question had arisen prior to the enactment of Chapter 115, General Laws Regular Session, 42nd. Legislature (Art. 5539b, Vernon's Ann. Tex. Civ. Stat.). In view of the provisions of that Act, it is even clearer that the claim for interest is not barred, for the amendment in which the claim is asserted is not based upon, and does not grow out of a new, distinct or different transaction or occurrence.

The sixth proposition in appellant's brief presents in our opinion reversible error. The proposition pertains to the seventh special issue submitted to the jury: "What do you find from a preponderance of the evidence was the usual and customary agent's commission for the sale of land in the neighborhood of Stamford, Texas, during the spring and summer of 1933? Answer in per cent., if any." The jury's answer was: "Five per

cent." Plaintiff in error in that part of his petition which seeks recovery on quantum meruit by reason of his services in procuring Carothers as a purchaser alleges that "the reasonable value of plaintiff's services, which services were accepted by the defendant, and the reasonable commission for the sale made was at least five per cent on the amount paid the defendant and agreed to be paid the defendant by Carothers." Defendant in error objected to the issue "for the reason that it is immaterial upon the pleadings and evidence, and is not an ultimate finding of fact upon which judgment can be based."

■ The objection should have been sustained. In a suit on quantum meruit for services the law fixes the measure of recovery, implying a promise to pay the reasonable value of the services. Clark-Buffalo Oil Corp. v. Montgomery, 27 S. W. (2d) 851; Fort Worth Properties Corp. v. Bahan, 68 S. W. (2d) 228; First National Bank of Houston v. Cardinell, 42 S. W. (2d) 145; Stephens v. Tomlinson, Henderson & Co., 88 S. W. 304; Schultz v. Zelman, 111 S. W. 776; Pryor & Wilson v. Moody, 49 S. W. (2d) 506; Brady v. Richey & Casey, 187 S. W. 508. It was correctly said in the case last cited that "In determining what is reasonable under the circumstances of a given case, the end accomplished, as well as the time and effort expended, should be taken into consideration." The ultimate issue on the measure of recovery in plaintiff in error's suit on quantum meruit is the reasonable value of the services performed. The issue submitted was evidentiary only and not an ultimate fact issue. McClory v. Schneider, 51 S. W. (2d) 738; Pryor & Wilson v. Moody, 49 S. W. (2d) 506. As said in McClory v. Schneider (supra), "Reasonable compensation due a broker is not always nor necessarily the usual and customary compensation and vice versa." The issue submitted to the jury, therefore, was not the same as the ultimate fact issue, the reasonable value of the services which the law fixes as the measure of recovery.

The same issue was submitted on the first trial of the case, but the brief on the appeal from the judgment rendered in that trial contained no assignment of error and no proposition pertaining to that issue.

■ The testimony of the witness York that Gay told him he was going to turn the property over to Colbert for sale should have been excluded as heresay. If what Gay said to York can be classified as a hearsay declaration, it is not admissible under the exception to the hearsay rule, which permits testimony as to such declarations, because it does not appear that Gay's asser-

tion was made within the scope of his authority. Southern Surety Co. v. Nalle & Co., (Com. App.) 242 S. W. 197; McCormick and Ray's Texas Law of Evidence, Sections 362, 508, pp. 451-452, 658-659. In our opinion the Court of Civil Appeals correctly concluded that there was no evidence tending to prove that Gay had authority, either actual or apparent, to employ Colbert or other person to procure a purchaser for the ranch.

After careful consideration of all of the assignments and propositions in appellant's brief in the Court of Civil Appeals, we conclude that none of them, except the two last above discussed, presents material error.

On another trial, the plaintiff's petition should be amended to eliminate the count that seeks recovery on the contract, and the issue as to Gay's authority to employ Colbert should not be submitted.

The judgments of the district court and Court of Civil Appeals are reversed and the cause is remanded to the district court for another trial.

Opinion adopted by the Supreme Court April 30, 1941.