F. H. VAHLSING, INC., Appellant,

v.

Eligiro ADAMES et al., Appellees.

No. 7174.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 1, 1962.

Rehearing Denied Oct. 29, 1962.

**912**

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Bruce L. Miller, Hereford, for appellant.

Hay & Gillespie, Lubbock, John B. Stapleton, Floydada, for appellees.

NORTHCUTT, Justice.

For the purpose of this appeal, we adopt the statement of the case as made by appellant. This is a suit brought by the appellees, Eligiro Adames, Rumaldo Hernandez, Manuel Contreras, Fred Villarreal, and Gilbert Longoria, against appellant, F. H. Vahlsing, Inc., to recover moneys allegedly due appellees from appellant under a claimed contract of hire, allegedly made on behalf of appellant by one C. W. Duncan, and relating to an onion crop in Floyd County, Texas. The issues made on the trial on the merits were (a) whether, as appellees allege, whatever contract they made with Duncan was in fact a contract with appellant, or whether, as appellant asserts, Duncan was engaged in an independent venture in Floyd County, appellant's connection with which was limited to the selling of certain onion plants, the advancement of certain moneys, and the subsequent purchase of certain onions; and (b) the sufficiency of the evidence, the court's charge and the jury's verdict to establish the terms of the claimed contract and the measure of any recovery right appellees might have; and the numerous points of error which follow will each and all relate in some manner to these two primary questions. The jury found the facts in favor of appellees and against appellant, and allowed recoveries as follows:

(a) To appellees, Eligiro Adames and Rumaldo Hernandez, the sum of $4,709.60;

(b) To appellee, Manuel Contreras, the sum of $947.92;

(c) To appellee, Fred Villarreal, the sum of $329.20; and

(d) To appellee, Gilbert Longoria, the sum of $1,038.52;

and from the judgment rendered on this verdict appellant has regularly prosecuted its appeal.

It was the theory of appellees that appellant agreed to furnish onion plants to the farmers on the basis of appellant receiving 20 per cent of the proceeds from the sale of the onions, and the farmers were to set the

plants out, labor, water, and irrigate up to harvest time and then appellant was to take over and harvest the onions and sell them and charge the farmers $.85 a sack for harvesting the onions, clipping them, sacking, shipping, and selling them. It was contended this agreement was made in the office of appellant in Mathis, Texas, and made with F. H. Vahlsing, president of appellant.

It was the contention of appellant that no such agreement, as relied upon by the appellees, was ever made but that appellant sold the onion plants to C. W. Duncan and any advances made by appellant to Duncan were credits extended to him. Mr. Vahlsing testified as to the contention of appellant that appellant sold the onion plants to Duncan on credit and advanced him money in harvesting but that Duncan was acting on his own and not in any manner as an agent for appellant. The case was submitted to a jury on special issues. The special issues submitted and the answers of the jury were as follows:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that in the making of the contract sued on herein C. W. Duncan was acting for and in behalf of F. H. Vahlsing, Inc., a corporation?

"Answer 'Yes' or 'No'.

"ANSWER: Yes.

"If you have answered the above and foregoing special issue 'yes', then answer the following special issue; otherwise you need not answer the following special issue.

### "SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that C. W. Duncan was authorized by F. H. Vahlsing, Inc., to enter into such contract?

"Answer 'Yes' or 'No'.

"ANSWER: Yes.

### "SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that the contract sued on was entered into by C. W. Duncan as an individual operator?

"Answer 'Yes' or 'No'.

"ANSWER: No.

### "SPECIAL ISSUE NO. 4

"What sum of money, if any, do you find from a preponderance of the evidence is due and owing to each of the plaintiffs under the terms and conditions of the contract sued on?

"Answer by indicating in dollars and cents, if any, opposite the name of each plaintiff in the blank space provided.

"1. Eligiro Adames and Rumaldo Hernandez the sum of $4,709.60.

"2. Manuel Contreras the sum of $947.92.

"3. Fred Villarreal the sum of $329.20.

"4. Gilbert Longoria the sum of $1,038.52."

Since the numerous points of error relate in some manner to the two primary questions above set out, we will consider the points as they affect the two primary questions. It is undisputed that appellant furnished the onion plants. The onions were set, grown, and harvested. There was a contract made with the appellees to harvest the onions. The onions were harvested by the appellees. Since the contract was made with appellees by Duncan under the contention of the parties, it was necessary to determine whether Duncan was acting for appellant or for himself; and if for appellant, was he authorized by appellant to enter into such contract? The jury found in answer to special issue #1 that Duncan was acting for and in behalf of appellant and under special issue two that he was so authorized. Duncan was in

charge of the plant at Lockney and so far as this record is concerned, all transactions had with the appellees were by Duncan other than the telephone conversation had with Vahlsing by Adames. Under special issue #3 the jury found against appellant's contention and found the contract sued on was not entered into by Duncan as an individual operator. As to appellant's objection that no proper predicate had been laid for the admission of Adames' conversation with Vahlsing over the phone, we think that Adames was authorized to so testify since he stated he had known Vahlsing since 1938 and had talked to him and knew his voice. Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771 by Com. App., opinion adopted by Sup.Ct.

There is evidence that the onion plants were sent to the farmers by Vahlsing's truck or one he hired and that he furnished a crew to set the onions, but the farmers paid for such work. It is to be here noticed the plants were sent to the farmers and not to Duncan. There is evidence that at the time of entering the agreement, as to the furnishing onion sets by appellant, Duncan made a deal with Mr. Vahlsing to oversee operation out there in Floyd County for Vahlsing, and Vahlsing was to furnish Duncan expenses as far as labor was concerned. When getting ready to harvest the onions, Duncan contacted Adames and told him, "Eligiro, we need a man to run a packing shed in Lockney." When Eligiro Adames asked Duncan how much he would pay, Duncan told him that he would have to talk to Vahlsing "in the telephone." Adames and Hernandez went to the packing shed and Duncan put in a long distance telephone call to Mr. Vahlsing in New York. While Duncan was talking over the phone to the party in New York, Duncan stated to Adames, "He wants to talk to you." Adames took the phone and talked to Vahlsing, and he knew it was Vahlsing because he recognized his voice. Vahlsing at that time told Adames what he would pay. Adames did not think he could get a crew for the price offered. Adames and a few

others worked for a while at the price offered. After being unable to get trucks at the price Vahlsing first offered, Adames, Hernandez, and Longoria talked to Duncan and suggested calling Vahlsing again. Duncan called for Vahlsing over the phone but they did not hear what was said by Vahlsing but did hear what Duncan said; and after the telephone conversation, Duncan told them Vahlsing was going to give them $.45 a hundred and for them to get out and get some trucks.

J. M. Harding was manager of the Hereford division of the F. H. Vahlsing, Inc. The telephone in the Lockney onion shed was in the name of F. H. Vahlsing. The money that was paid to appellees for their labor was received from the appellant's office in Hereford by check and the check cashed and laborers paid in cash for part of the work done. Every sack of onions that was shipped from the packing shed at Lockney had F. H. Vahlsing, Inc., Home Office New York, New York on them. No sacks were ever used other than the F. H. Vahlsing, Inc. sacks. There were several exhibits offered and other testimony we deem unnecessary here to detail. J. M. Harding, manager of appellant's Hereford division, testified as follows:

"Q. All right. Will you read along with me here on your truck receipt, do you see Mr. Duncan's name anywhere —any place on this truck receipt?

"A. No.

"Q. All right. Will you read along with me up here. 'Any shortage must be deducted at delivered cost from cartage paid by you to Trucker. You will be invoiced in full.' This is on F. H. Vahlsing's truck receipt. 'In the event that no cartage is paid by you, you will wire collect to our main office immediately notifying us of any shortage— otherwise you will be held responsible.' Is that what it says?

"A. That is what it says.

"Q. Can you tell me any place on there that the person that got that would be notified to get in touch with C. W. Duncan at Lockney, Texas?

"A. No, sir.

"Q. All right. That does instruct, as the language shows there, to get in touch with F. H. Vahlsing, Incorporated, does it not?

"A. Yes."

Several of appellant's points of error are leveled at the sufficiency of the evidence to sustain the recovery of each of appellees as found by the jury. Duncan was in charge of Lockney Onion Shed and was the person dealing with appellees. We will not further discuss the testimony concerning the sums due each of the appellees other than concerning the proposed acknowledgement of Duncan as to the amounts due the appellees. Adames had testified that Duncan had gone to get money to pay the appellees and then testified as follows:

"Q. Now, let's see Adames, where were we here. I think we had got to the packing shed about eight o'clock that morning and then Duncan shows up about noon.

"A. About noon. Yes, sir.

"Q. And said what at that time?

"A. He said, 'I didn't get no money because Mr. F. H. Vahlsing wanted to check the books—wanted to check my books.'

"Q. All right. And then did you ever get paid any more?

"A. No, sir."

 After the appellees were not paid any more, they contacted Mr. Barnes, Labor Commissioner. Mr. Barnes was dead at the time of the trial. There was testimony that Mr. Barnes went to Lockney and conferred with Duncan and checked Duncan's books that Duncan kept there at the shed and at

that time filled out some forms for everyone and the forms were shown to Duncan, and Duncan agreed that they were correct. These forms had the amount that was supposed to be due each of the appellees. Special issue #4 asked as to the amounts due each appellee, naming them individually. The manner in which said issue was submitted, we do not think was multifarious. Gray County Gas Co. v. Oldham, Tex.Civ. App., 238 S.W.2d 596 and cases there cited. We are of the opinion that the declaration of Duncan, that the amounts set out by Barnes were correct, was admissible against appellant. It is stated in Le Sage v. Pryor, 137 Tex. 455, 154 S.W.2d 446 by Com.App. and adopted by Sup.Ct. as follows:

"Declarations of an agent or employee are admitted against the principal or employer as an exception to the hearsay rule and to make them admissible the facts must bring them clearly within the limitations of the exception. Not only must such declarations be made within the course of the employment, but they must bear close relation to the performance of an authorized duty or act in connection with which they are made. They must not be purely voluntary or made merely in casual conversation. Hinson v. Ely Walker & Co., 65 Tex. 103; Southern Surety Co. v. Nalle & Co., Tex.Com.App., 242 S.W. 197; McCormick & Ray's Texas Law of Evidence, pp. 658–662, Sec. 508.

See also Deaton & Son, Incorporated v. Miller Well Servicing Co., Tex.Civ.App., 231 S.W.2d 944.

As shown by this record, the way the whole matter was handled, Duncan was the best one to testify as to amounts due each of the appellees since he was in charge at the onion shed and kept the books. Barnes checked Duncan's books and listed the amounts and Duncan stated that was the correct amounts. We think the record justifies the finding of the jury that Duncan was acting for and on behalf of F. H. Vahls-

ing, Inc. and such declaration was properly admitted against appellant.

 It is undisputed that a contract was entered into with the appellees by Duncan; and it being appellant's contention that Duncan was an individual operator, then the burden was on appellant to prove that fact. Appellees would not be expected to prove contrary to their contention. We do not believe that special issue #3 misplaced the burden of proof. We find no reversible error and overrule all of appellant's points of error. Judgment of the trial court is affirmed.