**GOODPASTURE, INC., Appellant,**

v.

**Joe SKAGGS et al., Appellees,**

No. 5475.

Court of Civil Appeals of Texas, Waco.

Dec. 30, 1975.

of a child, to render judgment against a defaulting party for any unpaid amount owed under an order of the court.

McGowan, McGowan & Hale, Brownfield, for appellant.

Huffaker & Green, Tahoka, for appellees.

HALL, Justice.

The appellees are in the business of buying and selling junk iron and pipe and other scrap metal. In late November or early December, 1972, they made an oral agreement with the appellant, Goodpasture, Inc., to purchase several thousand tons of junk from Goodpasture at the price of $18.00 per ton. The junk consisted of water wheels and other parts of old irrigation systems, trucks, cement mixers, tanks, and other unusable scrap iron located on farms and other properties owned by Goodpasture in and around Terry County. The appellees brought this suit against Goodpasture for damages on the theories, originally, of breach of the oral contract and quantum meruit. The essence of the appellees'

pleadings was this: When the contract was made, the appellees and Goodpasture knew that some of the scrap iron, specifically the water wheels, was not worth $18.00 per ton by reason of its weight and quality, but that other parts of the junk was worth more than $18.00 per ton, and $18.00 was agreed upon by the parties as a mean value per ton; that the water wheels alone were not worth more than $3.00 per ton; that Goodpasture was anxious to have the water wheel scrap removed first, and appellees agreed to this procedure, knowing the junk they would finally buy would have a total value of $18.00 per ton; that after the appellees had removed 685.51 tons of junk which was mostly water wheels, paying $18.00 per ton therefor in keeping with the agreement, and had removed many other loads of water wheels from the fields to Goodpasture's place of business at "Thirty Acres" and cut them up, Goodpasture refused to continue with the contract. The appellees prayed for $100,000 for breach of the contract; and, under an alternative "quantum meruit" count, they sought $10,100 as the difference between the $18.00 per ton already paid by them for the 685.51 tons of junk and its actual value of $3.00 per ton, and $6,000 as their expense for removing the remainder of the scrap to Goodpasture's business location and cutting it up.

Goodpasture filed a general denial; a special plea that the oral contract pleaded by appellees violates Sections 2.201[1] and 26.01,[2] Vernon's Tex.Codes Ann., Bus. & C., and will not support their cause of action; and a counterclaim on sworn account for

1. § 2.201. Formal Requirements; Statute of Frauds.
(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

2. § 26.01. Promise Or Agreement Must Be In Writing.

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. (b) Subsection (a) of this section applies to . . . (6) an agreement which is not to be performed within one year from the date of making the agreement.

$2,753.31 allegedly still unpaid by the appellees for the scrap iron bought and hauled off by them, with additional counts for attorneys' fees and pre-judgment interest.

During the course of the trial, the appellees filed a trial amendment in which they alleged that (1) the oral contract "by reason of the same being in a sum and for junk in excess of $500 and other reasons and the same not being in writing and signed by the parties, is and was unenforceable"; (2) there was no consideration or a failure of consideration for the amount paid by appellees to Goodpasture "in excess of $3.00 per ton" for the water wheels and other junk actually received by them; and (3) for "removing [other] water wheel systems [which Goodpasture refused to deliver to appellees] out of the sand, hauling the same into the Defendant's property, and cutting the same up" they were entitled to recover on quantum meruit the sum of $7,855.

It is undisputed that the appellees received delivery of 685½ tons of junk from Goodpasture, at the rate of $18.00 per ton, before Goodpasture refused further delivery under the contract. It is also undisputed that the junk received by the appellees was composed of both water wheels and material of much higher value, although how much of each, and its value, is disputed. Disputed, too, is the question of which party first breached and caused the ending of the agreement between them. Also, on the trial the parties stipulated that the balance owed to Goodpasture by the appellees on the account for junk delivered to the appellees at the rate of $18.00 per ton was the sum of $2,059.92; and that the number of tons not paid for "would be this [sum] divided by 18."

Trial was to a jury. Answering special issues numbered as follows the jury found that (1) the agreement of $18.00 per ton was based upon knowledge by appellees and Goodpasture "that junk of a higher value than the water wheel systems was included therein arriving at said price"; (2) the market value of the junk received by the appellees was $12.00 per ton; (3) the reasonable value "of the services performed by the [appellees] in pulling out, hauling in, and cutting up the water wheels left on the defendant's premises" is $8,000; (4) Goodpasture requested the appellees to perform the services enumerated in special issue no. (3), above; (6) the services performed benefited Goodpasture; and, (7) Goodpasture should have reasonably expected to pay appellees for these services. The jury failed to find that (5) the services were performed by the appellees "with the expectation of being entitled to charge [Goodpasture] compensation therefor."

The appellees moved the court to disregard the jury's answer to special issue no. (5) on the grounds that (a) there is no evidence to support the answer and (b) the question inquired about therein (whether the appellees expected to get paid for the services when they were rendered to Goodpasture) is immaterial, and render judgment for the appellees on the remainder of the verdict, and on the parties' stipulation. The court granted this motion in its entirety. That is, it disregarded the answer to Special Issue No. 5 on the grounds that there is no evidence to support it and that the inquiry made therein is irrelevant, and rendered judgment on the remainder of the verdict and the stipulation "that Plaintiffs should have and recover of and from the defendant the sum of $4,113.06, and the sum of $8,000.00, and that the Defendant should be entitled to offset thereof the sum of $1,835.52 for a total recovery on behalf of the Plaintiffs in the amount of $10,277.54."

The record shows that upon the closing of proof by all parties, but before the case was submitted to the jury, Goodpasture moved for an instructed verdict on the grounds that "[t]here is no evidence in the case to show that services were being rendered by the [plaintiffs] with the expectation of being entitled to charge the defendant therefor; there is no evidence to show that the services as performed benefited the defendant in any manner; there is no evidence to

show that the defendant should have expected to pay for the work performed by the plaintiffs." The motion was overruled. Goodpasture timely filed objections to the court's charge to the jury on a number of grounds which we need not detail, including one to the effect that Special Issue No. 1 constituted an improper measure of damages on quantum meruit. The objections were all overruled.

■ After judgment, Goodpasture filed what it denominated a "Motion For Judgment On Finding Of Jury," asserting that the oral contract was enforceable to the extent performed, entitling Goodpasture to recover on its cross-action under the jury's finding; that the answer to Special Issue No. 2 was immaterial; and that, for sundry reasons, the verdict would not support a recovery by plaintiffs on quantum meruit. The record fails to show that this motion was called to the attention of the trial court or acted on by it. Therefore, contrary to the assignments of error in Goodpasture's brief, nothing relating to the motion is preserved for review. *Tex-Wash Enterprises, Inc. v. Robna,* 488 S.W.2d 504, 505 (Tex.Civ.App.—Waco, 1972, writ ref., n. r. e.).

Goodpasture assigns 21 points of error on appeal. It did not file a motion for new trial.

■ In point one, complaint is made about the overruling of Goodpasture's motion in limine designed to prevent specified proof by the appellees. There can be no error in the overruling of a motion of this nature. The error, if any, would be subsequently permitting the proof over proper objection on the trial; and this error, to be preserved for review in a jury trial, would have to be assigned in a motion for new trial. Rule 324, Vernon's Tex.Rules Civ. Proc.; *Miller v. Miller,* 274 S.W.2d 762, 764 (Tex.Civ.App.—San Antonio, 1955, writ ref.); *Superior Insurance Company v. Sanchez,* 428 S.W.2d 718, 719 (Tex.Civ.App.—Waco, 1968, writ ref., n. r. e.).

■ In points 2 and 3, complaint is made of the permitting of proof over Goodpasture's objection. The effects of the assignments of error in points 4, 5, 6, 7, 8, 9, 10, and 15, are complaints that the case was improperly submitted to the jury in several particulars relating to the measure of damages and to alleged elements of a quantum meruit action. Complaint is made in point 12 that Special Issue No. 1, as submitted, constitutes a comment upon the weight of the evidence. Reversal is sought in points of error 14, 16, and 18, on the grounds that the evidence is factually insufficient to support the jury's answers to Special Issues Nos. 4, 6, and 7. Because these complaints were not assigned as error in a motion for new trial, they have been waived and we are without authority to review them. Rule 324; *Darryl v. Ford Motor Co.,* (Tex. Sup., 1969) 440 S.W.2d 630, 633; *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (1960); *Manning v. Sears, Roebuck & Company,* 417 S.W.2d 639, 640 (Tex.Civ.App.—Houston, 1967, writ ref.).

■ Contrary to Goodpasture's contentions, no error may be based upon the court's ruling on its motion for instructed verdict, because complaints turning upon the *overruling* of a motion for instructed verdict must be brought forward as assignments of error in a motion for new trial. Rule 324; *Tex-Wash Enterprises, Inc. v. Robna, Inc.,* supra (at 488 S.W.2d 506).

In its point 11, Goodpasture assigns error to the court's action in disregarding the jury's answer to Special Issue No. 5, asserting that by this answer "the jury found that the plaintiffs performed the services without expectation of being entitled to charge the defendant compensation therefor, as this finding is an essential element of quantum meruit recovery." And in its points 13 and 17, Goodpasture asserts there is no evidence to support the jury's answers to Issues 4 and 7. We shall discuss these complaints together.

■ The answer to Special Issue No. 5 is not a finding, it is a failure to find. It is

a failure on the part of the jury to find by a preponderance of the evidence that the services for which the appellees seek payment from Goodpasture "were being performed with the expectation of being entitled to charge the defendant compensation therefor." In their motion to disregard, the appellees asserted that the question inquired about in this issue is immaterial, and that there is "no evidence" to support the answer. The Court granted the motion and disregarded the answer on both grounds. Because the appellees had the burden of proof on the issue, the want of any evidence to support the answer cannot benefit them, and is not a proper basis for disregarding the answer. What the appellees and the court obviously meant by "no evidence to support the answer" was that the evidence establishes conclusively, as a matter of law, the affirmative of the question; that is, that the only evidence on the question is that the services were being performed by the appellees with the expectation of being entitled to be paid therefor by the defendant. See *Williams v. Bailey*, 471 S.W.2d 446, 447 (Tex.Civ.App.—Waco, 1971, writ ref., n. r. e.). If the only evidence on the question requires an affirmative answer, then the jury's failure to find the affirmative was properly disregarded. Rule 301.

The negotiations between the parties for the sale and purchase of the junk was handled by Rex Keach on behalf of Goodpasture, and by Joe Skaggs on behalf of appellees. Keach testified as follows: "We wanted to get rid of the water wheels. We had a lot of other junk there. We decided we would put it up for the highest bidder. Joe [Skaggs] was to move all water wheels off before he started on anything else. He made the offer for the junk and I told him before he made the offer that he was to get the water wheels before he got anything else. I told him that, because we wanted to make sure that we got the water wheels out first. It would cost more money to cut up the water wheels to where he could get a load in weight on his truck than it would anything else there. The water wheels by

themselves were nearly a losing proposition. That's the reason we had the other iron to go along with it, so he could afford to take it all. We agreed on the deal because he was to clean up all the water wheels on all the farms, the Thirty Acres, everywhere that we had them, before he started on anything else . . . . He was supposed to get all of our water wheels and after all of the water wheels was done away with, he was supposed to get all of our scrap iron that we had. . . . The highest bid we ever got just on the water wheels was $2.50 per ton. That is because they are bulky and you can't carry very much on a truck. And, they had to be cut up and a lot of them had to be dragged out of the sand. . . . He hauled them in from the farms there to the Thirty Acres. And he cut them up there at the Thirty Acres. The biggest percentage of what he left at Thirty Acres has been cut up."

Skaggs testimony was substantially the same as Keach's on the water wheels priority. Their testimony in this regard is undisputed in the record, and is corroborated in several material respects by the testimony of other witnesses. This testimony conclusively establishes that Goodpasture requested (in fact, required) appellees to perform the services inquired about in the issues; that appellees expected payment therefor in the value differential between that of the water wheels and the other, more valuable junk; and that, likewise, Goodpasture should have expected (and did, in fact, expect) to make payment in this fashion. Accordingly, the jury's answer to Special Issue No. 5 was properly disregarded; and Issues 4 and 7 are supported by proof.

Additionally, it is the settled rule that "where one receives a benefit by accepting the services of another, even though performed in pursuance of an invalid or illegal contract, nevertheless such person is bound upon the plainest principles of equity for the reasonable value of such services." *Colbert v. Dallas Joint Stock*

*Land Bank,* 136 Tex. 268, 150 S.W.2d 771 (Tex.Comm.App., adopted, 1941). As we had said, no complaint to the measure of damages submitted to the jury has been preserved. Under the record, judgment thereon was proper.

The appellant's remaining points and contentions are without merit under the record, and are overruled.

The judgment is affirmed.